STATE v. PETERSON.

1. TESTIMONY OF CONVICT CO-DEFENDANT.—Where one of two defendants charged with larceny and jointly tried has been previously convicted of highway robbery (which is an infamous offence), testimony given by him in his own behalf on this trial for larceny should go to the jury under an instruction from the court that his testimony is incompetent as against his co-defendant.

Before NORTON, J., Aiken, June, 1891.

The record referred to in the opinion was as follows:

STATE OF SOUTH CAROLINA,   } *In Court of Sessions.*
    Lexington County.      }

|            THE STATE            |        *Indictment* |
|:------------------------------:|:-------------------:|
|               *v.*             |         *for*       |
|       JORDAN ROBERSON.          |  *highway robbery.* |

True Bill: JACOB J. DERRICK, Foreman.

At a Court of General Sessions begun and holden in and for the County of Lexington, in the State of South Carolina at Lexington court house, in the said County of Lexington, and State aforesaid, on the third Monday of February, in the year of our Lord one thousand eight hundred and eighty-three. the jurors of and for the county aforesaid, in the State aforesaid, upon their oath present: That Jordan Roberson, late of the State and county aforesaid, on the twenty-first day of December, in the year of our Lord one thousand eight hundred and eighty-two, with force and arms, in the county and State aforesaid, in and upon one Dennis Dreher, in the peace of God and the said State, then and there being, feloniously did make an assault, and him the said Dennis Dreher did then feloniously beat and strike and put in fear and danger of his life, and did then feloniously and violently steal, take, and carry away from the person and against the will of the said Dennis Dreher, certain money of the said Dennis Dreher, to wit, one piece of silver money of the denomination and value of one dollar, of the proper goods and chattels of the said Dennis Dreher, against the form of the act of the general assembly of the said State in such case made and provided, and against the peace and dignity of the State.

R. G. BONHAM, Solicitor.

Guilty.   J. H. MEETZE, Foreman.

The defendant, Jordan Roberson, having nothing to say why sentence should not be pronounced against him, it is the judgment and sentence of the court that he be confined at hard labor in the State penitentiary for one year.

J. H. HUDSON,

Feb. 22d, 1883.                        Presiding Judge.

A true copy of the indictment, finding of the grand and petit juries, the sentence of the court, and of all endorsements on the original indictment in this case now on file in my office.   Given under my hand and seal of office this 17th day of April, 1891.

WM. J. ASSMAN,

[SEAL.]                                C. C. C.

*Messrs. Henderson Bros.*, for appellant.

*Messrs. Croft & Chafee,* contra.

February 15, 1892. The opinion of the court was delivered by

MR. JUSTICE McGOWAN.   At the April term, 1891, for Aiken County, a true bill was found upon an indictment against Mingo Peterson, Jordan Robertson, Joshua Schofield, and George Quattlebaum for grand larceny in stealing seed cotton from W. N. Jones, in said county, on December 6th, 1890.   At the June term, 1891, Mingo Peterson and Jordan Robertson were put on trial before Judge Norton and a jury, and being convicted of grand larceny, were sentenced by Judge Norton to two years at hard labor in the penitentiary.   Mingo Peterson alone appeals to this court.

In the arraignment and challenge of jurors, the defendants divided and differed in the exercise of their respective challenges. Among the witnesses produced by the State was one July Hymes, who admitted that he was an accomplice with the defendants. He testified directly to the complicity of the defendants in the theft.   There were facts and circumstances testified to on the part of the State which the State claimed corroborated Hymes, and there were other facts testified to on the part of the defendant Peterson, which he claimed contradicted the aforesaid facts and circumstances testified to on the part of the State.   When the defendant Peterson announced that he had rested his case, the judge called upon the defendant Robertson to produce his

testimony.   He produced several witnesses, and then offered himself as a witness in the case.   The defendant Peterson, before Robertson was sworn, objected to him as a witness against said defendant Peterson, and produced from the clerk of Lexington County *a record* (which should appear in the report of this case), purporting to be a record of the conviction of the said Robertson for highway robbery.   The solicitor, on behalf of the State, contested the position of the defendant Peterson, claiming, 1st, that the record was not properly authenticated; and 2nd, that even if Robertson was infamous, yet as a defendant he could testify. His honor ruled that the record was properly authenticated and in form, but that Robertson was not disqualified by reason of his conviction, and as a defendant could testify.   He further ruled that the record of conviction could be put in as evidence to the credibility of the witness Robertson.   Robertson was sworn as a witness, and his testimony tended to implicate Peterson in the alleged theft.

Mingo Peterson excepted to the rulings of his honor, Judge Norton, and asks for a new trial on the following grounds: "1. Because it is submitted that his honor erred in allowing the defendant Robertson to testify as a witness in this case, it having been shown by the production of the record, that he had been convicted of highway robbery.   2. Because it is submitted that his honor erred in not charging the jury as requested by the defendant Peterson, 'that the jury are advised not to convict the defendant, Mingo Peterson, simply upon the testimony of the witness Hymes, admitted to be an accomplice; and that unless they find from the evidence that Hymes is corroborated by other evidence bearing upon the material question in the case, to wit, whether Peterson stole the cotton in question, then they ought to acquit him; and that in this matter, as in all others, Peterson is entitled to the benefit of every reasonable doubt.'   3. Because it is submitted that his honor erred in charging the jury as follows, 'You are the exclusive judges of the credibility of witnesses, and may, even upon the uncorroborated testimony of an accomplice, convict, provided you are satisfied of the truthfulness of his testimony.   Your sound judgment will, no doubt, suggest what suspicion should attach to his testimony, and what corrobo-

ration, if any, is necessary to produce such satisfaction of its truth.' "

The old well settled rule was, that one who had been convicted of a crime belonging to the class known as the *crimen falsi,* was said to be infamous and incompetent to testify. At common law Robertson would not have been competent as a witness for another reason—that he was a party defendant. But the act of 1866, now contained in section 2643, General Statutes, provides that "in the trial of all criminal cases, the defendant shall be allowed to testify (if he chooses to do so and not otherwise) as to the facts and circumstances of the case." This certainly changed the rule which excluded one from testifying, for the reason that he was a party defendant; but it makes no allusion to any other disability, as, for instance, it does not, certainly in express terms, expunge the disability arising from infamy, and we do not clearly see how the removal of one disability could have the effect of incidentally removing another, which was entirely distinct. The statutory provision which gives a defendant permission to testify in his own case is very general and positive, and it may be that such permission wipes out all disabilities in the way, so far as the defendant who elects to exercise the right himself is concerned. The matter, however, becomes somewhat complicated, when two or more defendants are indicted jointly, and the testimony given affects not only the defendant testifying, but also his co-defendant. Indeed, it seems at least doubtful whether the framers of the provision (1866) had in contemplation a case where there were two or more defendants. The words are "*the* defendant shall be allowed, &c., if *he* chooses to do so," &c.

In the case of the *State* v. *Robertson* (26 S. C., 119), it was held that a defendant, who testifies in his own behalf as permitted by the statute, thereby subjects himself to all the incidents of a regular witness, and his general reputation for veracity may be assailed; that he is subject to the "usual duties, liabilities, and limitations of witnesses." This being so, why should Robertson be exempt from the rule as to infamy which is applied to other witnesses, at least as to other persons, even a co-defendant? His incapacity was general, and only superseded by his exercis-

ing the right under the statute to testify in his own behalf. If the statute gives that right without qualification or limitation, does it necessarily follow that it makes him competent generally and for all purposes? As his competency is special and for a particular purpose, it would seem that his testimony should also be limited accordingly. As it seems to us, it would be dangerous doctrine and in violation of well settled principles of the law to allow a defendant, infamous in character, and therefore under the general rule incompetent to testify, to make himself a general witness against his co-defendants, by simply exercising the right to be sworn in his own behalf. The question is new, and not free from difficulty. Assuming that Robertson, notwithstanding his infamy, might under the statute testify in his own behalf, we cannot think that made him competent to testify generally against his co-defendant, Peterson; and that the jury should have been so instructed. In 1 Greenleaf on Evidence, section 374, it is said: "In regard to extent and effect of the disability thus created (infamy), a distinction is to be observed between cases in which the person disqualified is a party, and those in which he is not. In cases between third persons his testimony is universally excluded. But when he is a party, in order that he may not be wholly remediless, he may make any affidavit necessary to his exculpation or defence, or for relief against an irregular judgment or the like; but it is said that his affidavit shall not be read to support a criminal charge," &c.

From the view we take it will not be necessary to consider the other exceptions in regard to the testimony of an accomplice.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and the case remanded to that court for a new trial.