## 7474

### STATE v. KENNEDY.

1. PLEADINGS—ACCESSORY.—AN INDICTMENT against one charging him as accessory to a murder before the fact need not allege an intention to murder A. when in fact B. was killed by mistake.

2. ACCESSORY—EVIDENCE.—One indicted as principal with one as accessory may testify against the accessory, tried separately, before his own trial and without having been dismissed from the record.

3. CONSPIRATOR—EVIDENCE.—DECLARATION of a conspirator here admitted against himself, but it may have been admitted against the other conspirators.

4. WITNESS.—LEADING QUESTIONS asked by State of its own witness are not prejudicial to appellant, as they were proper and subsequently asked without objection.

5. IBID.—IBID.—A hostile witness or one taking the party calling him by surprise may, within the discretion of the trial Judge be asked leading questions.

6. IBID.—EVIDENCE—CROSS-EXAMINATION.—AN ACCESSORY to the murder of A. by mistake for B. may be asked on cross-examination questions tending to elicit his feelings toward B. and his motive for desiring his death.

7. EVIDENCE.—The sufficiency of the evidence of an accomplice, whether corroborated or not, is for the trial Judge and the jury.

Before ————, J., Barnwell, 1909.    Affirmed.

Indictment against J. Chester Kennedy for accessory to murder of W. Perry Ussery.    From sentence, defendant appeals.

*Messrs. Bates & Simms,* for appellant.    Reporter received no argument.

*Solicitor Jas. F. Byrnes,* contra, cites: *It is not necessary to set out in the indictment all the attending circumstances:* 14 Rich., 225; 1 Hale P. C., 569; 33 N. E., 739; 47 S. W., 886; 9 Ency., 631, 553; 2 Strob., 77; 6 Ency. of Ev., 737; 52 S. E., 12; 78 Ala., 474; 75 Pac., 1093; 22 S. W., 371; 29 Ala., 20; 20 La., 839; 21 Cyc., 840.    *One indictment*

*covers the acts against deceased:* 12 Cyc., 280, 289, 283, *Principal as witness against accessory:* 12 Cyc., 450; 1 Ency., 395; 1 Green., 518; 19 S. E., 843; 7 B. & S., 490; Whar. Crim. Ev., 384, 347; 3 Ency., 211; 146 U. S., 325. *Evidence admissible against principal is admissible against accessory:* 34 S. E., 330; 1 Ency., 74; 9 Tex. App., 435; 46 Ga., 298; 76 Ga., 808; 6 Ind., 98; 3 Cliff., 221; 2 Bish. Cr. Proc., 15; 11 S. C., 189. *Leading a party's own witness is within discretion of trial Judge:* 8 Ency., P. & P., 83; 30 Id., 1130; 1 Green., 539; 43 S. C., 126. *Feeling toward intended victim may be inquired into:* 21 Cyc., 891; 6 Ency., of Ev., 725; 4 Strob., 142.

March 5, 1910.   The opinion of the Court was deliv-. ered by

MR. JUSTICE HYDRICK.   The first count of the indictment charged Quitman Johnson and Ferdinand Grubbs with the murder of W. Perry Ussery.   The second and third courts charged appellant and Grubbs as accessories before and after the fact.   Appellant alone was tried and convicted on the second count.

Against appellant's objections, testimony was admitted tending to show that he had conspired with his co-defendants to take the life of Marvin Holland, and that Ussery was shot by mistake for Holland.   Appellant contends that this testimony was inadmissible, because the indictment charged him as accessory to the murder of Ussery, without alleging the intent to murder Holland, and the killing of the latter by mistake.

The indictment alleged with sufficient certainty the crime actually committed.   Nothing more was necessary. . The motive or intent, unless the intent is an essential element of the crime charged, is only evidentiary matter, which need not be alleged in an indictment, but may, nevertheless, be proved, as tending to establish the commission of the crime. In *State* v. *Jenkins,* 14 Rich., 215, 225, the Court said:

"The rules of criminal pleading do not require that, in the description of the offense intended to be charged, all the attending circumstances which happen to distinguish the particular instance from others of the same offense, shall be set out in detail. Nor, although the fact of the prisoner's guilty connection with the act which consummated the offense must be averred, is it required that the circumstances which constitute the particular manner of such connection shall appear on the record. It is only necessary to state those facts which are in law essential to constitute the particular offense charged, as in this case, such as are legally essential to the crime of murder." And on page 227: "When it is said in the books that, besides the legal description of the offense, the manner of the death must be stated with exactness, it is only meant that the particular mode of violence whereby the death was caused, whether by shooting, stabbing, beating, or striking, strangulation, poisoning, etc., must be set forth, and not that the *manner* of the prisoner's connection with the use of that violence shall appear on the record."

In Smith's case, 2 Strobh., 77, the defendant shot at Carter, who was on horseback, and declared that his intention was only to cause the horse to throw him. The shot killed a negro, who was unseen by the defendant. *Held,* murder. The Court said: "It is not denied that this question is the same as if he had killed Carter instead of the negro, for if one design to kill A, but, by accident, kills B, his crime is the same as if he had executed his intended purpose. It will be murder, or manslaughter, or self-defense, according to the circumstances. It is very clear that the intent with which an act is done very often gives character to the crime, but there is a legal conclusion drawn from the facts of the case, entirely independent of the intent of the party. Thus it is said in 2d Starkie Ev., 950, that 'where the defense is that the death was occasioned by accident, the nature of the act which produced the death,

and the real motive and intention of the prisoner, are the proper subjects of evidence, but the conclusion as to the quality of the offense, as founded upon such facts, is a question of law.' "

In the case at bar, the jury were charged: "If one intends to murder another and misses the intended victim, and kills a third person, a by-stander' he, would be just as guilty as if he had killed the man whom he meant to kill. The same is true of the law of accessory before the fact or after the fact."

Appellant does not question the correctness of this statement of the law, only in its application by the Court to the case of an accessory, contending that the Court "should have explained to the jury that said proposition could only apply to an accessory present at the homicide, and aiding and abetting its commission, and could not apply to one charged under section 635 of the Criminal Code, as in this case, with having hired or counselled the commission of the felony by a party committing the crime out of the presence of the alleged accessory." We are unable to see any reason for such a distinction. We think the proposition is equally applicable to the case of an accessory, in the legal sense of the word, as to the case of one who was present, aiding and abetting the commission of a felony, who, we may say in passing, is not an accessory, but a principal. *State* v. *Putnam,* 18 S. C., 175. In 3 Green. Ev., sec. 44, the law is thus stated: "If the party employed to commit a felony on one person, perpetrates it, by mistake, upon another, the party counselling is accessory to the crime actually committed." The authorities are unanimous on that point. If the principal varies totally or substantially from the solicitation, and commits an entirely different crime—one which did not, and could not have probably or naturally resulted from the effort to commit the crime incited—the person who incited him would not be accessory to the crime committed, but where, as in this case, the

principal, in attempting to commit the crime to which he was incited, by mistake, accident or design, commits another crime, the person inciting is accessory to the crime actually committed. The law transfers the original wicked intent to the result."

The principals, Johnson and Grubbs, not being on trial, were admitted, against appellant's objection, as competent witnesses against him. Upon this question, the authorities are in hopeless confusion. Some authorities hold that where two or more are jointly indicted, one cannot be a witness for or against the others, unless the defendant called as a witness has been finally discharged from the record, either by *nolle prosequi,* order of discharge, or by verdict of acquittal, or plea of guilt and sentence. 1 Green. Ev., sec. 363; 1 Enc. L. & P., 561. Others hold that, though jointly indicted, if they are separately tried, one may be a witness in behalf of another. While still others hold that where accomplices are jointly indicted, but separately tried, one may be called as a witness for the prosecution, though his own case has in no way been disposed of. 1 Enc. L. & P., 569, where it is said this is the "better doctrine," and it seems to be supported by the greater weight of authority, though the reasons for some of these distinctions are not quite obvious. While we have found no case in our own reports directly in point, it is inferable from a number of them that this practice has prevailed to some extent in this State. *State* v. *Anthony,* 1 McC., 285; *State* v. *Alexander,* 2 Mills, 171; *State* v. *Coppenburg,* 2 Strobh., 273; *State* v. *James,* 31 S. C., 218; 9 S. E., 844; 34 S. C., 49, 12 S. E., 659. In a good many States the matter has been regulated by statute. The rule of exclusion grew out of the common law doctrine that a party to the record, or one interested in the result, with certain exceptions, which were engrafted upon the rule from supposed necessity, was not competent as a witness, because of the temptation to perjury. But the tendency of modern

legislation and judicial decisions has been to depart from the strictness of the common law, and to enlarge the scope of the competency of witnesses, leaving it to the intelligence of the more enlightened juries of the present day to pass upon the credibility of the witnesses, and decide what is true and what is false.

The common law doctrine has been abrogated by statute in this State. Section 64 of the Criminal Code provides: "In the trial of all criminal cases, the defendant shall be allowed to testify (if he desires to do so, and not otherwise) as to the facts and circumstances of the case." In *State* v. *Peterson,* 35 S. C., 279, 14 S. E., 617, it was held that, "while one of the defendants jointly indicted and jointly tried might, notwithstanding his previous conviction of an infamous crime, testify in his own behalf, it did not remove the incompetency imposed upon him by the common law on account of his conviction as a witness against his co-defendant, and that his testimony should go to the jury under instructions from the Court that it was incompetent as to his co-defendant."

In considering the statute the Court said: "This certainly changed the rule which excluded one from testifying, for the reason that he was a party defendant; but it makes no allusion to any other disability, as, for instance, it does not, certainly in express terms, expunge the disability arising from infamy, and we do not clearly see how the removal of one disability could have the effect of incidentally removing another, which was entirely distinct. The statutory provision which gives a defendant permission to testify in his own case is very general and positive, and it may be that such permission wipes out all disabilities in the way, so far as the defendant who elects to exercise the right himself is concerned."

Under the terms of the statute, any of a number of defendants jointly indicted and jointly tried would have the right "to testify as to the facts and circumstances

of the case," and the language of the statute does not, certainly in express terms, limit his competency to testify only in his own behalf. We think the intention of the Legislature was to remove the common law disability of incompetency of defendants in criminal cases by reason of being parties to the record, or of being interested in the result, and put them upon the same footing as other witnesses. Hence it has been held that when a defendant goes upon the witness stand he "thereby subjects himself to all the incidents of a regular witness, and his general reputation for veracity may be impeached; that he is subject to the usual duties, liabilities and limitations of witnesses." *State* v. *Peterson, supra.* Similar statutes have been similarly construed by the Supreme Court of the United States in *Benson* v. *U. S.,* 146 U. S., 325; 36 L. Ed., 991. See also *Com.* v. *Brown,* 130 Mass., 279. In the former case Mr. Justice Brewer, in an able opinion, reviews the authorities at some length, and reaches the conclusion that, even at common law, where two were jointly indicted, but separately tried, one might testify against the other.

But, if there be doubt of the correctness of the foregoing conclusions, it seems clear that section 400 of the Code of Civil procedure is conclusive of the matter. That section, so far as applicable to this discussion, is as follows: "A party to an action or special proceeding in any and all Courts, and before any and all officers and persons acting judicially, may be examined as a witness on his own behalf or in behalf of any other party, conditionally, on commission, and upon the trial or hearing in the case, in the same manner and subject to the same rules of examination as any other witness." That section concludes as follows: "Nothing contained in section 8 of this Code of Procedure shall be held or construed to affect or restrain the operation of this section." Section 8 referred to is: "This Code of Procedure is divided into two parts: the first relates to courts of justice and their jurisdiction; the second relates

to civil actions in the Courts of this State." The concluding sentence of section 400 above quoted, referring to section 8 above quoted, shows an intention to guard against the construction that it applies only to civil actions.

A similar construction was given to another part of the same section of the code in *State* v. *Reynolds,* 48 S. C., 384, 26 S. E., 679, where it was held that section 400 applies to criminal as well as civil actions.

In the case of *State* v. *Franks,* 51 S. C., 259, 28 S. E., 908, it was said that section 64 of the criminal code, *supra,* does not remove the common law disability of a defendant so as to allow him to testify *in behalf of* a co-defendant, jointly tried with him. But, on examination of that case, it will be seen that the decision was rested upon other grounds as well, and the construction given the statute was unnecessary to the decision of the case.

On the trial of an accessory before the fact, any testimony which would be competent and relevant to establish the guilt of the principal, if he were on trial, including his declarations and confessions, is admissible; for the guilt of the principal must be proved before the accessory can be convicted. And, as one charged as an accessory may introduce any competent and relevant testimony tending to show, either that the principal crime, charged in the indictment was not committed at all, or that it was not committed by his alleged principal, the converse must be true. *State* v. *Sims,* 2 Bail., 29; *State* v. *Crank,* Id., 66.

The point that Grubbs was not allowed to make some statement which he intimated a desire to make is not sustained by the record.

The declaration of the defendant, Johnson, to the witness, Lloyd Kennedy, was competent, as it tended to prove the guilt of Johnson, and to that purpose its admission was limited by the Court, though it is by no means certain that it was not competent against the appellant, for the rule is, that when *prima facie* evidence of a

conspiracy has been introduced, the acts and declarations of any conspirator, during the pendency of the conspiracy, and in furtherance thereof, or in regard thereto, are the acts and declarations of each and of all the conspirators, and are admissible against any or all of them. *State* v. *James,* 34 S. C., 49, 12 S. E., 659.

The appellant complains that the Court allowed the solicitor to propound leading questions to the defendant, Johnson, who was called as a witness for the State. The record shows that, when this witness was first called to the stand, he demurred to his being called to testify against his co-defendant, and the Court instructed him that he was not compelled to testify to anything that would incriminate himself. The solicitor asked permission to ask him leading questions. The appellant's counsel objected, and the record fails to show that any ruling was made. The questions subsequently propounded were not objected to and were unobjectionable. On the next day the witness was recalled by the State, and testified that the reason he hesitated the day before was that he was drinking, and that he had received messages from first one and another not to testify against Kennedy. He then said he wanted to testify and proceeded to do so. The sheriff testified to finding two empty whiskey bottles in his cell the night before.

Appellant complains further that the solicitor was allowed to propound leading questions to the witness, Escrow Burges. The examination of this witness showed that he was not only a hostile witness, but that he had taken the prosecution by surprise, and it was not improper to allow the solicitor to lead him in his examination, the result of which showed that he admitted that he had made statements to the prosecuting attorneys as to a certain conversation had with appellant, which statements he then testified were not true. In this there was no error. It has been frequently decided that the allowance of leading

questions is a matter in the discretion of the trial Judge, which will not be interfered with by this Court, unless it is made to appear that the discretion was abused to the prejudice of appellant.

The next ground of complaint is that, when appellant was on the stand, testifying in his own behalf, the solicitor was allowed to ask him what he and Holland fell out about, and if he had not made some confidential communications to Holland about the killing of Weeks, and if he had not threatened to kill Holland if he ever divulged the same. The testimony was competent, as tending to show the feeling existing between appellant and Holland, and appellant's motive for wishing to accomplish the death of Holland. There was no legal inference or insinuation that appellant had anything to do with the death of Weeks; but, even if the testimony had been of that character, it was, nevertheless, competent and relevant to the issue before the Court. When a defendant, in a criminal case, goes upon the witness stand, he is subject to cross-examination just as any other witness. *State v. Robertson,* 26 S. C., 117; *State* v. *Peterson,* 35 S. C., 279, 14 S. E., 617.

Having held that the testimony of Johnson and Grubbs was competent, there is no foundation for the exception that there is no evidence to support the verdict. The testimony of these accomplices was corroborated in numerous material particulars. But whether corroborated or not, its sufficiency was a matter for the jury and the Circuit Judge. *State* v. *Brown,* 3 Strobh., 508; *State* v. *Green,* 48 S. C., 136, 26 S. E., 234.

Judgment affirmed.

MR. JUSTICE GARY *concurs in the result.*