13705

STATE v. HOLMES

(171 S. E., 440)

*Messrs. C. M. Edwards* and *L. D. Jennings,* for appellant.

*Mr. Frank A. McLeod, Solicitor,* for the State.

October 27, 1933.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BLEASE.

James Holmes, Willie Evans and Esther Robinson, all colored, were indicted and tried together, in the Court of General Sessions for Sumter County, for the crime of murder, growing out of the alleged killing by the defendants of Nora Franklin, by strangulation.

The defendant, Holmes, was, usually called "Donnie" Holmes; Evans very often went by the name of "Mottie" Evans; and the woman, Esther Robinson, bore the nickname of "Queenie."

Neither of the defendants engaged counsel. The Court assigned counsel for each of them. L. D. Jennings, Esq., and C. M. Edmunds, Esq., appeared for Holmes; W. M. Levi, Esq., and George D. Levy, Esq., represented Evans; and Messrs. Epps & Epps defended Esther Robinson. The record discloses clearly and fully that all these attorneys, who received no compensation for their services, ably and efficiently performed their duties, and endeavored at every stage of the trial to see that their respective clients received the fair and impartial trial guaranteed to them by the Constitution of this State and of the United States.

Under the theory of the State, all of the defendants were principals in the murder, it being claimed that all of them were present at the time of the alleged homicide, and participated therein. And the prosecution sought to show that the motive for the crime was to enable Holmes to collect $125.00 on account of an insurance policy on the life of the deceased, wherein Holmes, her nephew, was named as the

beneficiary. Alleged oral statements, in the nature of confessions, on the part of all three of the defendants were introduced by the State.

Each of the defendants pleaded not guilty. All of them testified in the trial. Willie Evans and Esther Robinson gave damaging testimony against their codefendant, Holmes.

The result of the trial, before his Honor, Judge Stoll, and a jury, was the acquittal of Esther Robinson; a verdict of guilty of murder with recommendation to mercy as to Willie Evans, and his sentence to life imprisonment; and a verdict of guilty of murder as to James Holmes, and his sentence to death by electrocution.

The appeal to this Court is on the part of James Holmes alone. Since he was not financially able to have printed the record in the case, on motion of his cousel, this Court has permitted typewritten records to be presented, and has acceded to the request that the appellant be not held to a strict compliance with the rules of the Court.

The appellant has presented four exceptions. The first, second and third of these relate to the admission of testimony. The fourth challenges certain instructions of the trial Judge to the jury. Since the complaint as to the charge has some bearing upon the correctness of the rulings as to the admission of the testimony, which the appellant says was erroneously received, we consider first the fourth exception.

In the main charge, before the jury were directed to retire for the purpose of the consideration of the case, the Circuit Judge gave them the following instructions: "Now, I charge you, where two or more persons are being tried for the same offense, they are known as what we call codefendants, and if one of them takes the stand, which he has a right under the law to do, to testify, he can testify only to such things as relate to the case under trial. But if his testimony relates to one of his codefendants, you cannot consider the testimony as against them. You only consider it as against the defendant who is testifying. For instance, Mr. Foreman, A, B and C are tried together. A takes the stand and admits

his part, and says things that incriminate himself, and also incriminate B and C, the jury could consider it as to A, but could not consider it as to B and C, because they are co-defendants."

Near the conclusion of the charge, Mr. R. D. Epps, of counsel for Esther Robinson, took the position that the charge as to the testimony of codefendants, above quoted, was erroneous. After some argument of the law on the subject, the presiding Judge decided to let the instructions stand as they had been given. Mr. Jennings, of counsel for the appellant, then announced that he agreed with the position taken by Mr. Epps. After the jury had retired, Mr. Epps presented to the Judge some authorities which he thought sustained his position, apparently being among them the case of *State v. Blue,* 118 S. C., 127, 110 S. E., 111. The jury, desiring to have some of the testimony in the case read to them, were brought into the courtroom. After the reading of that testimony, the trial Judge charged them further as follows: "Mr. Foreman and Gentlemen, before you retire, after thinking over the matter, I am afraid I committed an error in my general charge to you relative to the testimony of the defendants. I want to strike out that part where I stated testimony of the defendants could not be considered as evidence against a codefendant, and I instruct you this, that the testimony of the defendants— you are to be the judges of the credibility of the defendants as any other witnesses and you are the sole judges of what weight you give to the testimony of the defendants, as you are the judges of the weight you give the testimony of any other witness. I think that makes it clear what I am trying to correct. You may retire if that is all you want."

The appellant now says that the instructions first quoted were erroneous. He says, also, that the last instructions did not correct the previous error, and that thereby the law on the subject was left "in a confused state," and that the effect of the instructions was a declaration that the testimony of a codefendant could not be considered for or

against another codefendant, and he was prejudiced in his trial by failure of the Judge to adequately correct the error into which he had first fallen.

The instructions first given by the trial Judge were erroneous. While there may have been an indication in the opinion of the Court in the case of *State v. Franks*, 51 S. C., 259, 28 S. E., 908, that a defendant, in the trial of a criminal case, could not testify in behalf of a codefendant, jointly tried with him, it is entirely clear from the able opinion of Mr. Justice Hydrick, for this Court, in the later case of *State v. Kennedy*, 85 S. C., 146, 67 S. E., 152, 155, that such is not now the law in this State. The Court said in the *Kennedy case* that the decision in the *Franks case* "was rested upon other grounds" than the holding there indicated as to the testimony of a codefendant.

In the *Kennedy case*, Mr Justice Hydrick construed the effect of the provisions of Section 64 of the Criminal Code of 1902 (now contained in Section 1011 of the Code). The language of the statute is this: "In the trial of all criminal cases, the defendant shall be allowed to testify (if he desires to do so, and not otherwise) as to the facts and circumstances of the case." The distinguished jurist said: "The common-law doctrine [as to the testimony of codefendants] has been abrogated by statute in this State." He further said: "Under the terms of the statute, any of a number of defendants jointly indicted and jointly tried would have the right 'to testify as to the facts and circumstances of the case,' and the language of the statute does not certainly in express terms limit his competency to testify only in his own behalf. We think the intention of the Legislature was to remove the common-law disability of incompetency of defendants in criminal cases by reason of being parties to the record, or of being interested in the result, and put them upon the same footing as other witnesses. Hence it has been held that, when a defendant goes upon the witness stand, he 'thereby subjects himself to all the incidents of a regular witness, and his general reputation for veracity may be impeached; that he

is subject to the usual duties, liabilities, and limitations of witnesses.' *State v. Peterson, supra* [35 S. C., 279, 14 S. E., 617]."

While the *Kennedy case* was not expressly referred to in the later case of *State v. Cooler,* 112 S. C., 95, 98 S. E., 845, 846, it is evident the principles announced by Mr. Justice Hydrick in the former case were followed in the later. In that case, Cooler and Davis were indicted and tried together for the crime of murder. In the appeal, Cooler complained of the admission of statements made by his co-defendant, Davis, in the testimony of the latter, which statements, evidently, were damaging to Cooler. Judge Fraser, in speaking for this Court, used this language: "We say Davis was a witness, and had the right to make his statement, even if it included a statement that his codefendant had done the killing."

In *State v. Blue, supra,* the appellant and others had been indicted and tried together on a charge of the crime of grand larceny. In passing upon exceptions as to the admission of statements of one of the defendants made out of the Court, Mr. Justice Watts, for this Court said: "In addition to this he [the codefendant whose statements were objected to] testified in his own behalf; and his evidence, wherein he implicated the other defendants, was certainly competent to go to the jury for their consideration as to the guilt or innocence of all of the defendants."

In addition to the authorities cited, the case of *State v. Peterson, supra,* and the case of *State v. Adams,* 49 S. C., 414, 27 S. E., 451, tend to sustain the declarations of Mr. Justice Hydrick.

While the learned Circuit Judge committed error in the instructions he first gave to the jury as to the testimony of codefendants, that error was likely very beneficial to the appellant. As stated before, the testimony given by his two codefendants was very damaging to the appellant. His testimony had little, if any, effect as to the charges against the

other two defendants, for the appellant, apparently claiming that he was drunk and insane at the time of the commission of the crime charged against him, testified that he had no recollection of the occurrence, if he had any part in the killing of the deceased, his aunt.

The later instructions, to our mind, were entirely sufficient to clear up the error committed in the main charge, and they were in accord with the law as has been seen from our references to the cited cases. The law is, when two or more persons are indicted and tried together for the commission of the same crime, and one of the defendants voluntarily testifies in the trial, as he has the right to do, then the jury are to be the judges of the credibility of that defendant as a witness, and of the weight and effect of his testimony, not only for or against himself, but for or against all, or either of his codefendants in the case. The charge of the trial Judge, as corrected, clearly declared that law. It was not only his right, but it was the duty of the trial Judge, when he discovered that he had committed an error in his instructions, to make the necessary correction. See *Lumpkin v. Mankin,* 136 S. C., 506, 134 S. E., 503. It is not to be overlooked, too, that the correction in the instructions was given at the request of the appellant's counsel. If the correction, in the mind of that counsel, was not sufficiently clear, he should have asked for further instructions.

The first exception relates to the testimony of Officer J. D. Chandler, a witness for the State, as to statements, in the nature of a confession as to his part in the crime, made by the defendant Willie Evans, referred to in the testimony by the officer as "Mottie" Evans. In detailing the statements made to him by Evans, the officer was allowed to repeat what that defendant had told him of the part taken by the appellant, Holmes, in the alleged murder. It is contended that it was improper to admit the statements, or confessions, of Evans, made in the absence of the appellant, in which acts and words of the appellant, implicating

him in the crime, were included, since the appellant could not, under the law, be affected or bound thereby.

The exact point has been decided against the position taken, for in the case of *State v. Jeffords,* 121 S. C., 443, 114 S. E., 415, the Court, through Mr. Justice Fraser had this to say: "The next assignment of error is in allowing confessions of Harrison and Treece to be introduced in evidence, in so far as they contained accusations of Jeffords. *The rule is very clear that the confessions must be given as made.* If we strike out any part, then the confession ceases to be the confession as made. The rule in such cases is clearly to let all the defendant said be given, and the jury cautioned not to consider it against any one, except the man who makes it." (Italics ours.)

In the case at bar, several times during the taking of the testimony, the trial Judge repeatedly told the jury that they were to consider any statement, or confession, made out of the Court by either of the defendants only as to the defendant making it, and not against any other defendant. In his charge, he likewise fully instructed the jury.

The third exception complains of error in permitting the solicitor, on his cross examination of the defendant Willie Evans, to ask that defendant, generally, of acts and words of the appellant, having some bearing upon the killing of the deceased, and particularly as to the alleged attempt of the appellant, as testified to by Evans, to poison the deceased, by giving her whiskey containing Paris green, upon an occasion some weeks before the death of the deceased occured from strangulation. The cross examination complained of was entirely proper. When a defendant voluntarily elects to be a witness in his own behalf, he thereby assumes the position of any ordinary witness, and he may be cross examined as any other witness. See numerous cases, so holding, cited in the annotation to Section 1011 of the Code of 1932. The defendant Evans elected to go upon the witness stand. When he did so, he subjected himself to the

right of cross examination on the part of the solicitor. The appellant had the right, also, to cross examine Evans, and his counsel exercised that right. The appellant had the right, too, by his testimony, or the testimony of any other witness, to contradict, in the proper manner, the testimony of Evans, given either on his direct examination, or on his cross examination. See *State v. Adams, supra.*

The specific objection made in the argument of the appellant that it was error to admit the testimony of Evans, as to the previous attempt on the part of the appellant to poison the deceased, on the ground that it was error for the prosecution to endeavor to show the commission of another and distinct crime by the appellant, cannot be sustained. If the appellant attempted to poison the deceased, as testified to by Evans, proof of that act by him was clearly competent to go to the jury as evidence of the malice, as known to the law, of the appellant toward the deceased, and of his desire to take her life.

The appellant's second exception charges error in the Court permitting the introduction of the insurance policy on the life of the deceased, in which the appellant was named as beneficiary, without formal proof of the execution by the insurance company of the policy, and allowing the witness for the State, Officer Chandler, to testify regarding some of the contents of that policy, as related to him by the appellant. The record shows that when Mr. Chandler was testifying he related what the appellant had told him as to the part he had in the killing of the deceased. The witness testified as to statements of the appellant, tending to show that he had strangled to death his aunt that he, as the beneficiary of a life insurance policy on her life, might collect the insurance provided to be paid therein. The insurance policy, having been procured, was in the hands of Mr. Chandler at the time of one of his conversations with the appellant. The appellant identified the policy to Mr. Chandler and he identified it in the Court

as having been identified by the appellant. The appellant, in his testimony, practically admitted the identification of the policy formerly made by him. The statements of the appellant to Mr. Chandler, as to certain terms of the policy, related by Mr. Chandler in his testimony, corresponded with the terms of the policy produced in the Court. The policy and the testimony of Mr. Chandler, as to what the appellant had told him regarding it, were clearly admissible. There was never any question as to the execution and delivery of the policy by the insurance company; no issue in the case required any formal proof of its execution, and none was necessary.

In addition to giving special attention to the exceptions of the appellant, and the parts of the record relating to those exceptions, we have read carefully the entire record in the case. We have not found anywhere any error which calls for a reversal of the judgment against the appellant. The charge of the trial Judge has especially impressed us. He instructed the jury fully on all phases of the law which could have had any possible bearing in the case. The appellant certainly had a fair and impartial trial. Not only have his own attorneys and the trial Judge seen to that, but the solicitor and the officers of the law have contributed to that end. The evidence against the appellant was strong. The terrible situation confronting him is the result of his own conduct.

The judgment of this Court is that the judgment below be, and the same is hereby, affirmed.

MESSRS. JUSTICES STABLER, CARTER and BONHAM and MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN concur.