## 17661

STATE, Respondent, v. James LANGLEY and Eula Mae Langley, Appellants

(114 S. E. (2d) 506)

*Charles W. McTeer, Esq.,* of Chester, *for Appellants,*

*George F. Coleman, Esq., Solicitor,* of Winnsboro, *for Respondent,*

May 30, 1960.

*Per Curiam.*

The appellants, who are husband and wife, are jointly indicted and convicted of the unlawful sale on August 4, 1959, of intoxicating liquor.

They occupy as a place of business and as a home in the City of Chester a building which is divided by a partition without a door between the apartments. In one side, known as 110 Walnut Street, is what is variously called in the record "Bob's Jumping Bean", the "Jumping Bean" and the "Teenage Canteen", where snacks and soft drinks are sold and there is dancing by the patrons. The appellants reside in the other side of the building, which is 108 Walnut Street.

The prosecuting witness testified that he entered the "Jumping Bean" and asked for whiskey and was told by the husband, "You will have to go around and see my wife." Accordingly, he went out and entered from the street the other side of the building and asked Mrs. Langley for a half-pint of a certain brand of whiskey. After verifying the identity of the witness and "looking in the back", he said, she told him that she did not have that brand, whereupon he offered to take vodka which she passed to him and he gave her a five-dollar bill. She sent a little boy, inferably to the

"Jumping Bean", for change, with which he returned and Mrs. Langley gave the witness the proper change. The witness is a brother of a city policeman who had given him the five-dollar bill. The witness returned the change to him and gave him the bottle of vodka, which latter was introduced in evidence at the trial.

The transaction took place through a partition which was described in the testimony and photographs of it were offered in evidence by appellants. From about waist height it consisted of a mirror with a narrow aperture at about the level of the eyes of one standing. Below the mirror was a counter and cabinets of wood. The doors of the cabinets on the customers' side appear to be boarded shut. At the foot of the mirror and level with the counter is an oblong opening through which the vodka was delivered to the purchaser. It appears from the photographs to be about ten inches wide and five or six inches high.

The foregoing details are given because of the contention of the appellants that Mrs. Langley could not have been recognized by the witness. He testified that he, quoting, "looked down through the hole at the bottom of the mirror, and got a good look." Whether the witness could and did recognize and identify Mrs. Langley, as he testified, was an issue for the jury; by their verdict they resolved the issue against appellants.

Mrs. Langley testified and was asked by her counsel, "Have you tried looking through that hole from the hall to see if you could recognize or see anybody behind that partition?". The Solicitor objected on the ground that it related to an experiment; the objection was sustained, to which there is an exception. There is nothing in the record to indicate that the conditions under which the experiment was made were similar to those which existed when the alleged sale of liquor was made. 20 Am. Jur. 628, Evidence, sec. 756. The following is Section 791, 58 Am. Jur. 437, Witnesses:

"Experiments by others as to circumstances and effects concerning which a witness has testified are not generally admissible to contradict. It is rare that experiments can be made under precisely similar conditions, and unless they are the tendency is to confuse rather than to enlighten. Thus, a witness who has testified as to the prisoner's identity cannot be impeached by another, who testifies that he had experimented at a time corresponding to the time of night when the crime took place, and on a similar evening, and had satisfied himself that objects could not be distinctly seen at the distance the witness was from the party."

Granting that the court may have admitted answer to the question, within its discretion, answer favorable to appellants could hardly have affected the verdict in view of the other testimony and the photographs of the *locus* which were in evidence. There was, therefore, no prejudice to appellants in any view.

Another exception arises out of the following. After developing on cross examination that the prosecuting witness is a member of the Civil Defense Police and had taken the prescribed oath of office, appellants' counsel asked him, "Since you took that oath, have you reported or caused to be issued a warrant for the violation of the Sunday laws in Chester?" Answer was excluded by the court as irrelevant. It was plainly so. The witness' views and activities relating to the Sunday laws were foreign to the issue on trial and did not affect his credibility.

On cross examination appellant James Langley testified (tr. 27), without objection by his counsel, that he built the mirrored partition described above, quoting, "because I sold—I have sold liquor through there." Later in the cross examination (tr. 28) when the witness was asked if the reason why he had not taken down the partition is because he still sold liquor through it, counsel objected to the questioning as to other sales. If damage, it was done before the objection. The record indicates that the

objection was overruled, but the question was not answered. Some of the examination is so rare in nature that we copy it here:

"Q. Who stands behind this counter (in the residence half of the house) when you are over there in the Jumping Bean? A. Well, that is a $64.00 question.

"Q. Why is that the $64.00 question? A. When I sold whiskey, I didn't let nobody know who was behind the glass.

"Q. And this little arrangement here, Mr. Langley, what is this little hole in the mirror for? A. So I could see who was in the hall, but nobody could see back there.

"Q. And what is the pass-through for? Is that where you pass the liquor through? A. Yes, sir.

"Q. And where you collect the money? A. I have passed it through there.

"Q. But you have never had a license to sell liquor down at that place, have you? A. No, sir. *  *  *

"Q. Did you have any liquor there? A. Yes, I had whiskey there.

"Q. On that night? A. On Aug. 4. *  *  *

"Q. On the night it was supposed to have happened? A. Well, I had whiskey there, I reckon. I don't know what I had. I didn't go in there and check up on it.

"Q. Where was it? A. What?

"Q. The liquor? A. It was setting in my cupboard in there.

"Q. Where is your cupboard? A. In behind that partition.

"Q. And that—as a matter of fact, that is where you keep it, isn't it? A. My whiskey?

"Q. Yes? A. Yes, sir.

"Q. For sale? A. Well, I don't know. I don't sell it at all. I give away some.

"Q. Well, you do sell some of it. We will put it that way. A. Well now, I have. Let's put it that way. *  *  *

"Q. I say you had it in your house behind this partition wall for sale on the 4th day of August of this year, isn't that right? A. It was in my house.

"Q. For sale? A. I am not going to admit that. * * *

"Q. You had so many different brands, Mr. Langley, to tell the truth about it, you had so many different brands you don't remember what kind you had there, isn't that right? A. That is exactly right. * * *

"Q. You say you don't have any recollection of whether or not you had any vodka like in this bottle behind the counter? A. No, sir, I sure don't.

"Q. You just don't know one way or the other. You could have had it, couldn't you? A. Yes, sir, I could have had it. * * *

"Q. That is the question, Mr. Langley. You don't keep that liquor back there for your own personal consumption completely, do you? A. No, I told you just now I have sold whiskey through the hole."

The appellant volunteered for the role of witness and subjected himself to relevant and competent cross examination. *State v. Carson,* 131 S. C. 331, 126 S. E. 755. *State v. Holmes,* 171 S. C. 8, 171 S. E. 440. In *State v. Jacobs,* 111 S. C. 283, 97 S. E. 835, 836, a prosecution for illegal possession and storing of liquor, the defendant testified on cross examination, over objection, to the arrangement of his premises, closets, trapdoors, etc.; exception was overruled by the following language: "Furthermore, when the defendant became a witness in his own behalf, he was subject to cross examination as to the surrounding conditions, in order that the jury might determine whether the liquors were stored by the defendant for an unlawful purpose. *State v. Knox,* 98 S. C. 114, 82 S. E. 278." Similarly here, the testimony to which objection was made, the most of it stated above, was pertinent and tended to prove the guilt of the appellants. They cite in the brief *State v. Phillips,* 194 S. C. 46, 9 S. E. (2d) 32, a case of

storing liquor, which we find to be of no application here; incidentally, it was not concerned with cross examination. As said above, the photographs of the partition and counter in appellants' home, to which much of the cross examination related, were introduced in evidence by them. They were a natural and proper subject of cross examination. Finally, the scope of cross examination is largely discretionary with the trial court. 19 S. C. Dig., Witnesses, 267, p. 377. Certainly, no abuse of discretion appears.

At the conclusion of the evidence the appellant, James Langley, moved for direction of verdict of acquittal of him, which was refused. (There is no exception to the refusal of motion to direct verdict for Mrs. Langley.) This is the basis of appellants' last question on appeal. In view of all of the evidence, sufficient of which is recounted above, we think that the motion was properly refused. It was this appellant, in his place of business, to whom the prosecuting witness applied for the purchase of whiskey and he was directed by appellant to "go around and see my (his) wife", who was in another apartment of the same building, where the sale was made. It is inferable that he furnished change for the five-dollar bill, in order to complete the transaction. He admitted in his cross examination that he owned the liquor which was in his and his wife's apartment and that he sometimes sold it there; and that he had built the partition and counter for the purpose. From the foregoing we think that the jury was warranted in finding that he participated in the sale. All are principals who are present and aid and abet in the commission of a misdemeanor. *State v. Jiles et al.,* 230 S. C. 148, 94 S. E. (2d) 891. In that case husband and wife were convicted of possession of liquor in their combination home and place of business which, as here, was not a licensed liquor store. The sphere and function of the court with respect to a motion for directed verdict of not guilty were stated in the recent liquor case of *State v. Rayfield,* 232 S. C. 230, 101 S. E. (2d) 505, 507, as follows: ·

"The trial Judge is concerned with the existence or non-existence of evidence, not with its weight; and, although he should not refuse to grant the motion where the evidence merely raises a suspicion that the accused is guilty, it is his duty to submit the case to the jury if there is substantial evidence which reasonably tends to prove the guilt of the appellant, or from which his guilt may be fairly and logically deduced. *State v. Littlejohn,* 228 S. C. 324, 89 S. E. (2d) 924."

*State v. Burns et al.,* 133 S. C. 238, 130 S. E. 641, 643, and *State v. McMillan et al.,* 144 S. C. 121, 142 S. E. 236, were also cases in which husband and wife were jointly indicted and convicted of violations of liquor laws. Compare *State v. Anderson,* 230 S. C. 191, 95 S. E. (2d) 164, where defendant was convicted of storing "unstamped" liquor in his bedroom, which was upstairs over his wife's store, and he appears to have attempted to cast the whole guilt upon her. While the offense was storing there, the following quotation from the opinion in *State v. Burns et al., supra,* is of some present relevance: "If the whiskey was stored in the place of Burns' residence, as the evidence for the state tended to establish, the inference of fact that he knew of the whiskey and was a party to the act of storing, and that both he and his wife participated 'freely and deliberately' in the act, is clearly warranted. If so, obviously both he and his wife could be jointly tried for and convicted of the offense charged."

The exceptions are overruled and the judgment affirmed.