20564

The STATE, Respondent, v. Phillip Jackson PENDERGRASS, Appellant.

(239 S. E. (2d) 750)

*Vinton D. Lide,* of Hartsville, and *A. Glenn Greene, Jr.,* of Latta, *for Appellant,*

*Daniel R. McLeod, Atty. Gen., Brian P. Gibbes* and *Robert N. Wells, Jr., Asst. Attys. Gen.,* and *J. Dupre Miller, Sol.,* of Bennettsville, *for Respondent,*

December 12, 1977.

Ness, Justice.

Appellant was found guilty of murder committed while in the course of an armed robbery at Hermie's Restaurant in Hartsville, where the victim, a high school girl, was employed. We affirm.

Appellant first assigns error to the trial court's denial of his motion for continuance, which he asserts denied him effective assistance of counsel. The basis for the motion was the heavy caseload of the public defender, the notoriety of the instant case, and the fact that the public defender's investigator suffered a heart attack just prior to trial.

This Court will rarely disturb a trial court's resolution of a motion for continuance. *State v. Motley,* 251 S. C. 568, 164 S. E. (2d) 569 (1968) ; *State v. Hill,* S. C., 234 S. E. (2d) 219 (1977). A review of the transcript satisfies us that the public defender's representation of appellant complied with the prevailing standard of attorney competency in this State. Ordinarily, allegations by a convicted defendant of inadequate counsel will not suffice unless the representation was such as to render the trial a farce and mockery of justice. *Crosby v. State,* 241 S. C. 40, 126 S. E. (2d) 843 (1962) ; *McCall v. State,* 257 S. C. 93, 184 S. E. (2d) 341 (1971). Under this standard, tactical errors and errors of judgment by an attorney do not constitute a denial of effective assistance of counsel. *State v. Lewis,* 255 S. C. 466, 179 S. E. (2d) 616 (1971). As stated in *Crosby, supra,* 241 S. C. at 44, 126 S. E. (2d) at 845 :

"A lack of effective assistance of counsel must be of such a kind as to shock the conscience of the court and make the proceedings a farce and mockery of justice, and mere allegations of incompetency or inefficiency of counsel will not ordinarily suffice . . ."

We recognize the modern trend of evaluating the effectiveness of counsel by the "normal competency standard"

recently adopted by the Fourth Circuit Court of Appeals in *Marzullo v. Maryland*, 561 F. (2d) 540, 544 (filed September 2, 1977). In *Marzullo*, the court abandoned the farce and mockery of justice standard of *Root v. Cunningham*, 344 F. (2d) 1 (4th Cir. 1965), in favor of the normal competency test spawned by *McMann v. Richardson*, 397 U. S. 759, 90 S. Ct. 1441, 25 L. Ed. (2d) 763 (1970); *Moore v. United States*, 432 F. (2d) 730, 736 (3rd Cir. 1970); *United States v. DeCoster*, 159 U. S. App. D. C. 326, 487 F. (2d) 1197, 1202 (1973); *Herring v. Estelle*, 491 F. (2d) 125, 128 (5th Cir. 1974); *U. S. ex rel. Williams v. Twomey*, 510 F. (2d) 634, 641 (7th Cir. 1975); *Beasley v. United States*, 491 F. (2d) 687, 696 (6th Cir. 1974); *United States v. Easter*, 539 F. (2d) 663, 665-67 (8th Cir. 1976).

The latter test is framed in terms of the normal range of competency demanded of attorneys in criminal cases. Even under this stricter standard, representation need not be errorless in order to be effective. "A convict generally must establish that his counsel's error was so flagrant that a court can conclude that it resulted from neglect or ignorance rather than from informed, professional deliberation." *Marzullo, supra*, 561 F. (2d) at page 544.

We find that under either the farce and mockery of justice standard or the normal competency test, appellant had the benefit of effective assistance of counsel. The public defender demonstrated the normal and customary degree of skill possessed by attorneys who are reasonably knowledgeable of criminal law. There is nothing in the record to indicate appellant's conviction resulted from any deficiency on the part of his attorney. See *State v. Clark*, 170 Conn. 273, 365 A. (2d) 1167, 1172 (Conn. 1976), cert. denied, 425 U. S. 962, 96 S. Ct. 1748, 48 L. Ed. (2d) 208.

Therefore, we find no abuse of discretion in the trial court's denial of appellant's motion for continuance on any of the stated grounds.

■ Appellant next excepts to the trial judge's failure to declare the then-existing South Carolina death penalty statute unconstitutional and to the use of a bifurcated or two-phase trial. While appellant's trial was ten days subsequent to five landmark decisions rendered by the United States Supreme Court involving death penalty statutes, *Woodson, et al. v. North Carolina,* 428 U. S. 280, 96 S. Ct. 2978, 49 L. Ed. (2d) 944 (1976) ; *Proffitt v. Florida,* 428 U. S. 242. 96 S. Ct. 2960, 49 L. Ed. (2d) 913 (1976) ; *Jurek v. Texas,* 428 U. S. 262, 96 S. Ct. 2950, 49 L. Ed. (2d) 929 (1976) ; *Roberts v. Louisiana,* 428 U. S. 325, 96 S. Ct. 3001, 49 L. Ed. (2d) 974 (1976), it occurred prior to *State v. Rumsey,* 267 S. C. 236, 226 S. E. (2d) 894 (1976), in which this Court found the South Carolina statute to be constitutionally defective. We cannot say the trial judge erred in his reluctance to declare the death penalty statute unconstitutional at that point in time. In any event, appellant's exception to the judge's decision is moot since appellant was sentenced to life imprisonment, precisely the same sentence he would have received had the judge declared the death penalty statute unconstitutional.

■ Appellant's exception to the bifurcated trial procedure is likewise without merit in view of appellant's life sentence.

■ Finally, appellant asserts error in the trial judge's failure to exclude statements made by him to law enforcement officers after he had allegedly requested an attorney. While the testimony is contradictory, appellant may indeed have requested an attorney during his initial interrogation in Hartsville. Subsequently, he was transported to SLED headquarters in Columbia where he made a written statement containing an express waiver of his right to have an attorney present. He voluntarily took a polygraph examination which revealed he was not telling all he knew. Appellant then made another voluntary statement to police. Following his removal to the Darlington Detention Center,

he requested officials to visit his cell so he could provide them with more information.

We believe the lower court properly decided to admit appellant's statements into evidence. Even assuming appellant did request counsel following his interrogation in Hartsville, he subsequently waived his right to have an attorney present. The "procedural safeguard" established by *Miranda v. Arizona,* 384 U. S. 436, 457, 86 S. Ct. 1602, 16 L. Ed. (2d) 694 (1966) is susceptible of waiver. *U. S. v. Springer,* 460 F. (2d) 1344 (7th Cir. 1972), cert. denied, 409 U. S. 873, 93 S. Ct. 205, 34 L. Ed. (2d) (1972); *U. S. v. Crisp,* 435 F. (2d) 354 (7th Cir. 1970), cert. denied, 402 U. S. 947, 91 S. Ct. 1640, 29 L. Ed. (2d) 116 (1971); *U. S. v. Armedo,* 18 Cr. L. Reptr. 2141.

In *Michigan v. Mosley,* 423 U. S. 96, 102, 96 S. Ct. 321, 325-26, 46 L. Ed. (2d) 313, 320 (1975), the Court stated:

"[A] blanket prohibition against the taking of voluntary statements or a permanent immunity from further interrogation, regardless of the circumstances, would transform the *Miranda* safeguards into wholly irrational obstacles to legitimate police investigative activity, and deprive suspects of an opportunity to make informed and intelligent assessments of their interests."

However, a heavy burden rests upon the State to prove a person in custody knowingly and intelligently waived his privilege against self-incrimination and his right to counsel. *Miranda v. Arizona, supra; U. S. v. Sledge,* 546 F. (2d) 1120 (4th Cir. 1977). The mere fact a defendant signed a written waiver form does not conclude the issue; the State still has the burden of showing the waiver was voluntary. *Soolook v. State, Alaska,* 447 P. (2d) 55, cert. denied, 396 U. S. 850, 90 S. Ct. 107, 24 L. Ed. (2d) 99 (Alas. 1968). Conversely, it is unnecessary that an express written or oral waiver be found. *People v. Johnson,* 70 Cal. (2d) 541, 450 P. (2d) 865, cert. denied, 395 U. S. 969, 89 S. Ct. 2120, 23 L. Ed. (2d) 758 (1969).

Waiver may be discerned through conduct, *State v. Matt,* 251 Or. 134, 444 P. (2d) 914 (Oregon 1968); *State v. Sims,* 30 Utah (2d) 251, 516 P. (2d) 354 (1973), but silence alone is never sufficient. *Commonwealth v. Fisher,* 354 Mass. 549, 238 N. E. (2d) 525 (1968).

Whether or not there has been an intelligent waiver of right to counsel depends upon the particular facts and circumstances of each case, including the background, experience, and conduct of the accused. *Johnson v. Zerbst,* 304 U. S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938); *United States v. Hayes,* 385 F. (2d) 375 (4th Cir. 1967), cert. denied, 390 U. S. 1006, 88 S. Ct. 1250, 20 L. Ed. (2d) 106 (1968). The totality of the circumstances surrounding the waiver must be examined. *Schneckloth v. Bustamonte,* 412 U. S. 218, 93 S. Ct. 2041, 36 L. Ed. (2d) 854 (1973).

The instant case can be distinguished from the recent United States Supreme Court opinion of *Brewer v. Williams,* 430 U. S. 387, 97 S. Ct. 1232, 51 L. Ed. (2d) 424 (1977), 20 Cr. L. Reptr. 3095. In *Brewer,* a defendant's right to counsel was held violated where he was interrogated during a three hour trip alone with police. The defendant had repeatedly expressed his wish not to talk until he had spoken with his attorney at the destination of the trip, and the police officers had specifically agreed with the attorney not to interrogate the accused. However, a detective initiated conversation with the defendant, and by playing on the former mental patient's known religious feelings persuaded him to reveal the site of his victim's body. In *Brewer,* the defendant never relinquished or waived his right counsel.

In this case, appellant, a man with a twelfth grade education who had previously served time in jail, signed a written express waiver of his right to counsel. The voluntariness of the waiver can be discerned from the fact that the statement which followed it was self-serving and was an attempt on appellant's part to cast the blame on his co-defendant. Ap-

pellant's subsequent two statements, each preceded by a rendition of his *Miranda* rights, implicated him in the crime, and fully established there was "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst, supra.*

The judgment of the trial court is affirmed.

LEWIS, C. J., and LITTLEJOHN, RHODES and GREGORY, JJ., concur.