## 21255

The STATE, Respondent, v. Sidney Ross GOOLSBY, Appellant.

(268 S. E. (2d) 31)

*Geddes D. Anderson* and *Judson F. Ayers, Jr.,* Greenwood, *for appellant.*

*Atty. Gen. Daniel R. McLeod* and *Asst. Atty. Gen Brian P. Gibbes,* Columbia, and *Sol. William T. Jones,* Greenwood, *for respondent.*

June 24, 1980.

GREGORY, Justice:

Appellant Sidney Ross Goolsby was found guilty of the murder of Ruby Ann Medlin in the first phase of a bifurcated capital trial and sentenced to death upon recommendation of the trial jury at the end of the second phase. The case on appeal consolidates a direct appeal of the conviction and mandatory review of the death sentence. We affirm the conviction, vacate the death penalty and remand to the trial court.

## THE FACTS

On March 13, 1978, a motorist discovered the body later identified as Ruby Ann Medlin lying face down in the brush alongside U. S. Highway 93 in a desolate, desert-mountainous area of Yavapai County, Arizona. Mrs. Medlin had been missing from Columbia, South Carolina since March 8.

The cause of death was determined to be asphyxia by compression, rather than manual, strangulation. The examining pathologist's opinion was that some firm flat object or instrument was pressed against the throat of the victim, obstructing the air passage and causing death by asphyxiation. The physical findings in support of this conclusion were a flat, band-like bruise across the front of the victim's throat and fracture of the voice box cartilage rather than the hyoid bone, whose fracture is more commonly associated with manual strangulation. The voice box is rarely fractured in cases of manual strangulation.

Goolsby was arrested on March 14, 1978 at the home of his brother in Las Vegas, Nevada and charged with a South Carolina parole violation.[1] Nevada and South Carolina au-

---

[1] Goolsby had a record of two prior murder convictions. He received a life sentence for the first conviction in April of 1954 and for the second offense he received another life term in April of 1963 to run consecutively with the first term he was then serving. Goolsby was on parole when Ruby Ann Medlin was killed.

thorities were not then aware that Mrs. Medlin's body had been found in Arizona. Although Goolsby was questioned as to the whereabouts of Mrs. Medlin by Las Vegas police who also conducted a consent search of his automobile, no formal charges were brought relative to her disappearance.

After waiving extradition on the parole violation charge, Goolsby was transported by automobile from Las Vegas to South Carolina by Richland County Sheriff Frank Powell. Upon arrival he was immediately incarcerated.

The body found in Arizona was positively identified as the remains of Ruby Ann Medlin in mid-April of 1978. Shortly thereafter, Goolsby gave an oral confession of the murder, reciting in detail the circumstances of the crime and the subsequent cross-country transportation of Mrs. Medlin's body. Following the oral confession, Goolsby led Sheriff Powell and Sheriff Giles Daniel of Greenwood County to the scene of the crime. Later that same day, Monday, April 24, 1978, his confession was recorded and transcribed in Greenwood County, the situs of the murder.

Goolsby's story was that he strangled Mrs. Medlin on March 8, 1978 while parked at an abandoned and dilapidated building near Star Fort Golf Course in Greenwood County. The two had driven from Columbia to Greenwood that morning to visit his parents.

With the body resting only partially covered on the front floorboard of his car, Goolsby drove from Greenwood County to the spot on U. S. Highway 93 where he dumped Mrs. Medlin's body in the brush adjoining the road, with intermittent stops along the way for food, fuel and rest. After discarding the remains of his victim at approximately 11:00 p. m. on Saturday, March 11, Goolsby then drove to his destination of Las Vegas, Nevada. He was arrested three days later.

## THE EXCEPTIONS

(1) Initially appellant attacks the constitutionality of the South Carolina Death Penalty Statutory Complex, § 16-3-20 through § 16-3-28, Code of Laws of South Carolina (Cum. Supp. 1979). This contention was laid to rest in the recent case of *State v. Shaw*, 273 S. C. 194, 255 S. E. (2d) 799 (1979), cert. denied 444 U. S. 957, 100 S. Ct. 437, 62 L. Ed. (2d) 329, wherein we found the statutory scheme to be constitutionally indistinguishable from that approved by our United States Supreme Court in *Gregg v. Georgia*, 428 U. S. 153, 96 S. Ct. 2909, 49 L. Ed. (2d) 859 (1976).

(2) Appellant next asserts there was error in the lower court's inquiry of prospective jurors during *voir dire* as to their views on capital punishment. He argues the effect was to deny him a jury representative of the community through the exclusion for cause of those opposed to the death penalty.

A general objection to the death penalty is no reason for a trial judge to exclude veniremen for cause. *Witherspoon v. Illinois*, 391 U. S. 510, 88 S. Ct. 1770, 20 L. Ed. (2d) 776 (1968). However, when such a belief prevents the potential juror from rendering an impartial decision as to the guilt or innocence of the accused or to vote for the death penalty under any circumstances, such irrevocable commitment mandates excluding the venireman. Id.; *Lockett v. Ohio*, 438 U. S. 586, 98 S. Ct. 2954, 57 L. Ed. (2d) 973 (1978); *State v. Tyner*, S. C., 258 S. E. (2d) 559 (1979).

The lower court's inquiry during *voir dire*, while resulting in a number of exclusions, was an attempt by the trial judge to fulfill the holdings of *Witherspoon, Lockett* and *Tyner* and at the same time to carry out the directive of the statutory complex itself. § 16-3-20(E) provides:

In every criminal action in which a defendant is charged with a crime which may be punishable by death, a person

may not be disqualified, excused or excluded from service as a juror therein by reason of his beliefs or attitudes against capital punishment unless such beliefs or attitudes would render him unable to return a verdict of guilty according to law.

None of the prospectve jurors excused were excluded merely because of their beliefs, but rather on the basis of their consequent inability to faithfully carry out their duties as jurors under the law.

(3) Error is next assigned to the lower court's allowing the State to participate in the *voir dire*. The statutory scheme specifically empowers the defendant's attorney with the right to examine prospective jurors. § 16-3-20(D). This exception has no merit. We brushed the issue in *Tyner* and reached and disposed of it in *State v. Smart*, S. C., 262 S. E. (2d) 911 (1980), wherein we held the State's right to conduct *voir dire* examination discretionary with the trial judge. We find no abuse here.

(4) Appellant next takes exception to the trial judge's refusal to increase his peremptory challenges in light of this being a capital case. The legislative limitation [2] of peremptory challenges for a defendant arraigned for the crime of murder has been upheld by this Court even in capital cases. *State v. Wyse*, 32 S. C. 45, 10 S. E. 612 (1890) ; *State v. Holland*, 261 S. C. 488, 201 S. E. (2d) 118 (1973). The legislature did not see fit to include in the present death penalty statutory complex a provision for additional peremptory challenges. In our view, the ten strikes afforded appellant his due process rights. There is no reason shown to abrogate the legislative prescription. See *State v. Bailey*, 273 S. C. 467, 257 S. E. (2d) 231 (1979).

(5) Appellant also contends certain testimony admitted over objection was prejudicial hearsay requiring reversal. We think not. The testimony was elicited

---

[2] Section 14-7-1110, Code of Laws of South Carolina (1976) entitled appellant "to peremptory challenges not exceeding ten."

from a witness who was talking over the telephone to Mrs. Medlin shortly before she was murdered. The witness identified the voice of appellant in the background and testified Mrs. Medlin said, "Don't hit me . . .. It makes me think of the time you drug me out by the hair of my head from the Steak and Eggs."

The quotation was not offered as proof of the truth of the matters asserted therein, but rather as evidence of appellant's opportunity and the decedent's state of mind at the apparent outset of the transaction of events culminating in her murder. As such, the assertions were not objectionable as hearsay. See *Player v. Thompson,* 259 S. C. 600, 193 S. E. (2d) 531 (1972); Dreher, *A Guide to Evidence Law in South Carolina* (1967).

Furthermore, this evidence was merely cumulative to other evidence and, to an extent, appellant's confession; see *State v. Smith,* 230 S. C. 164, 94 S. E. (2d) 886 (1956); see also cases connected in 7A West's South Carolina Digest, *Criminal Law* at Key Number 1169(1); *Watts v. Bell Oil Company of Ocean Drive, Inc.,* 266 S. C. 61, 221 S. E. (2d) 529 (1976); and the testifying witness was fully cross-examined by appellant's counsel. *State v. Evans,* 202 S. C. 463, 25 S. E. (2d) 492 (1943), cert. denied, 320 U. S. 750, 64 S. Ct. 54, 88 L. Ed. 446.

(6) Next, appellant excepts to the lower court's denial of his motion for a change of venue based on news accounts of the case. Such a motion is discretionary with the trial judge, *State v. Tyner, supra,* and it is the defendant's burden to demonstrate actual juror prejudice as a result of the juror's awareness of the accounts. *State v. Fowler,* 266 S. C. 203, 222 S. E. (2d) 497 (1976). The record reflects maximum precaution by the trial judge to ensure the elimination of potential jurors that may have been prejudiced by the pretrial publicity, and the absence of prejudice on the part of those chosen to serve. No prejudice is shown, nor an abuse of the trial judge's discretion.

(7) Appellant objected to certain testimony on the ground the solicitor was leading a witness. The witness on direct examination by the State testified she heard a "struggle" over the telephone, which testimony was struck as conclusory. The solicitor then began breathing loudly, and asked the witness to describe what she heard him doing. Over objection she replied "heavy breathing", whereupon the solicitor asked her if she heard any heavy breathing over the phone, and once again over objection, the witness answered affirmatively.

A trial judge is vested with wide discretion when ruling on an objection to a question on the ground that it is leading. *State v. Lyles,* 210 S. C. 87, 41 S. E. (2d) 625 (1947); *State v. Outen,* 237 S. C. 514, 118 S. E. (2d) 175 (1961), cert. denied 366, U. S. 977, 81 S. Ct. 1948, L. Ed. (2d) 1266. We do not find the above colloquy an abusive exercise of that broad discretion, especially in light of the cumulative nature of the testimony.

(8) Appellant argues the admission of a photograph of the deceased showing the victim's face and neck, illustrating the band-like bruise across the victim's throat, was error. *State v. Waitus,* 224 S. C. 12, 77 S. E. (2d) 256 (1953) is cited for the proposition that a photograph of the victim is inadmissible if unnecessary to establish the facts, and offered solely for the purpose of inflaming the passion of the jury. See also cases collected in 7A West's South Carolina Digest, *Criminal Law,* at Key Number 438.

In the instant case, the photograph is not inflammatory or gruesome and was introduced to corroborate the testimony of the pathologist as to the cause of death, an issue as to which there was conflicting evidence. See *State v. Bellue,* 260 S. C. 39, 194 S. E. (2d) 193 (1973); *State v. Stallings,* 253 S. C. 451, 171 S. E. (2d) 588 (1969), cert. denied, 398 U. S. 911, 90 S. Ct. 1708, 26 L. Ed. (2d) 72. The determination of a photograph's relevancy and materiality being a

matter left to the trial judge's discretion, the admission of the photograph in the instant case was not an abuse thereof. *State v. Norris,* 253 S. C. 31, 168 S. E. (2d) 564 (1969) ; see also *Godfrey v. State,* 243 Ga. 302, 253 S. E. (2d) 710 (1979).

(9) The next exception assigns error to the admission of appellant's oral and written confessions. Although both statements were taken prior to any formal charges having been made against appellant relating to the homicide, he was a prime supect and in custody on the parole violation offense at the time the inculpatory statements were made. Thus, his custodial status invokes the requirements of *Miranda v. Arizona,* 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. (2d) 694 (1966).

The trial judge conducted an extensive *Jackson v. Denno*[3] hearing to determine the admissibility of the confessions, from which the following facts emerged. Goolsby was arrested in Las Vegas on March 14, 1978, and charged with a violation of South Carolina parole conditions. He was also a highly sought suspect in the disappearance of Mrs. Medlin. The Nevada authorities fully administered *Miranda* warnings and received a signed waiver of rights from appellant. An exculpatory statement was taken and later reduced to writing. Although very cooperative, Goolsby at that time denied any knowledge of the victim's disappearance.

Shortly thereafter, Sheriff Powell arrived in Las Vegas. He approached Goolsby, identified himself and advised appellant he wished to question him about Mrs. Medlin's disappearance. At that time Sheriff Powell was not aware that the victim's unidentified body had been found. When Goolsby responded he knew nothing about it, no attempt was made to interrogate appellant.

While in Las Vegas, Sheriff Powell met Goolsby's brother and was apprised appellant had a history of emotional prob-

---

[3] 378 U. S. 368, 84 S. Ct. 1774, 12 L. Ed. (2d) 908 (1964).

lems. The Sheriff agreed not to interrogate appellant during the three-day trip back to South Carolina, and that if Goolsby at any time during the investigation requested a lawyer, one would be provided. Goolsby's brother disputes a portion of this testimony, saying Sheriff Powell promised to arrange for an attorney once they arrived in South Carolina.

It is uncontested Sheriff Powell did not question appellant concerning the disappearance and homicide during the return trip and until approximately one month after arriving in Columbia. Although appellant testified in camera that some one dozen officers from various law enforcement agencies questioned him concerning the disappearance, no evidence was offered to corroborate this testimony. In mid-April, the body found in Arizona was identified. Goolsby was brought to Sheriff Powell's office on the morning of Monday, April 24 and advised Mrs. Medlin's body had been located. Sheriff Powell testified *Miranda* warnings were then administered and appellant gave an express waiver of his rights. The confession followed.

Powell further testified Goolsby then volunteered to take him to the scene of the murder in Greenwood. Appellant led the officers to an area near the Star Fort Golf Course in Greenwood County that matched the description of the scene appellant had earlier given Sheriff Powell. The party then returned to the Greenwood County Sheriff's office where *Miranda* warnings were again administered, an express waiver obtained and Goolsby's full statement reduced to writing and signed.

Goolsby's in camera testimony was essentially a denial of guilt and repudiation of the statement. He in effect contends the confession was a fabrication of the officers which he was coerced to sign. Other than his testimony, there is nothing in the record to substantiate these charges.

When a trial judge is faced with conflicting testimony relative to the validity of a confession, he must first make a

factual finding as to its validity before allowing the statement to go to the jury. *State v. Atchison,* 268 S. C. 588, 235 S. E. (2d) 294 (1977), cert. denied, 434 U.S. 894, 98 S. Ct. 273, 54 L. Ed. (2d) 181. Here, the trial judge found beyond a reasonable doubt *Miranda* warnings were properly administered before both the oral and written confessions were made, and that each confession was given freely and voluntarily after appellant had knowingly and voluntarily waived his rights to remain silent and have counsel present.

The record shows the State overwhelmingly met its burden of establishing the voluntariness of appellant's waiver of his fifth and sixth amendment rights, above and beyond the signed waiver forms introduced. *State v. Neeley,* 271 S. C. 33, 244 S. E. (2d) 522 (1978); *State v. Pendergrass,* 270 S. C. 1, 239 S. E. (2d) 750 (1977). The findings of the lower court with respect to the rendition of *Miranda* warnings, a knowing and voluntary waiver on each occasion, and the voluntariness of the subsequent statements are amply sustained by the evidence. These findings resulted from an extensive examination of the facts and circumstances presented by appellant and the State, the purpose of which is not to adjudge the truth or falsity of the statements themselves, but to determine only that the confessions were not a product of coercion and freely and voluntarily rendered. *Lego v. Twomey,* 404 U.S. 477, 92 S. Ct. 619, 30 L. Ed. (2d) 618 (1972). The confessions were properly admitted.

(10) Appellant also assigns error to the trial judge's refusal to grant a mistrial based on testimony by the pathologist as to the method of strangulation. As in his earlier argument concerning admission of the photograph of the deceased, appellant challenges the relevance of the evidence and asserts its purpose was intended solely to inflame the jury. This argument is frivolous.

The testimony and the photograph were necessary to explain the pathologist's theory that compression, rather than

manual, strangulation was the cause of death. To grant or deny a motion for a mistrial is a matter resting with the sound discretion of the trial judge, whose decision will not be disturbed on appeal absent a showing of abuse of that discretion. *State v. Lake*, 257 S.C. 407, 186 S. E. (2d) 256 (1972). There is no abuse shown.

(11) The next contention of appellant is that the solicitor, during his closing argument to the jury, made an improper reference to the appellant's failure to testify, requiring reversal. Appellant's counsel described [4] the purported impropriety as follows:

Mr. Anderson: Your Honor, as I recollect his argument, he eluded (sic) first to the fact that the defense had offered evidence, and then, as I recollect, something in the nature was said "since they have offered some evidence, I feel like I can comment", or something like that to the fact that there is an obvious lack of other testimony, or something like that. He turned over, Your Honor, for the record, as I recollect, he made demonstrative back like this—he didn't point; I'm not saying he pointed. I'm saying there was a demonstration given by him like, using his body to, or turning his head, and indicating the defendant.

The solicitor then countered:

Mr. Jones: Your Honor, my recollection of my remark is, I said, the defendant—I initiated, first, by saying that the State must prove the defendant guilty beyond any and all reasonable. (sic) I said the defendant does not have to put in any evidence, but I said since the defendant has chosen to put in some evidence, which I may put in quotes, I feel it is proper that at a later time I will, then, comment on evidence that I might deem which should have been put in. And I want to say this for the record, I did not turn in the

---

[4] The court reporter's recording equipment malfunctioned during that portion of the solicitor's argument. The court allowed counsel for appellant and the State to set forth their recollections of the contested argument.

direction of defense counsel, not that it would make any concern, or the defendant, on that occasion. I had turned earlier when commenting about the argument to the jury that they had to either take it all, or leave it all, as far as the confession's concerned.

While the prosecution may not comment to the jury, either directly or indirectly, on the defendant's failure to take the stand in his own defense, *Griffin v. California,* 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. (2d) 106 (1965) ; *State v. Rouse,* 262 S. C. 581, 206 S. E. (2d) 873 (1974), under either version of the comments there is no specification by the Solicitor, either direct or indirect, that we can see which would lead to an adverse inference by the jury of appellant's failure to testify. There was no error in denying appellant's motion for mistrial.

(12) Appellant next takes exception to a portion of ▮▮the trial judge's charge to the jury at the close of the guilt phase wherein the judge read § 16-3-20(A) of the Death Penalty Statute. That section, in pertinent part, states :

(A) A person who is convicted of or pleads guilty to murder shall be punished by death or by imprisonment for life *and shall not be eligible for parole until the service of twenty years,* notwithstanding any other provisions of law. (emphasis added)

Appellant contends this charge permitted the jury to speculate upon the possible effect of parole on appellant's sentence and thereby created a substantial danger the verdict was prejudiced thereby. We disagree.

While we do agree that a jury charged with assessing, or recommending, the penalty an accused is to suffer should not be invited to consider the effect of parole on the sentence to be imposed, *State v. Atkinson,* 253 S. C. 531, 172 S. E. (2d) 111 (1970), nor be allowed to speculate upon parole

eligibility when determining the guilt or innocence of a criminal defendant, *State v. Brooks,* 271 S. C. 355, 247 S. E. (2d) 436 (1978), whatever minimal prejudice, if any, may have resulted from that portion of the charge was fully cured by further instruction at the close of the guilt phase of the trial. The trial judge not only withdrew the portion excepted to, but affirmatively instructed the jury to consider the alternative sentences of the death penalty or life imprisonment without regard to parole. Any error was cured. *State v. Lightsey,* 43 S. C. 114, 20 S. E. 975 (1895); *State v. Holmes,* 171 S. C. 8, 171 S. E. 440 (1933); 23A C. J. S. *Criminal Law* §§ 1322, 1323.

(13) Appellant next argues the trial judge erred in refusing to charge appellant's defense of insanity request. We have combed this record and can nowhere find appellant's request to charge nor any argument, hearing or ruling by the lower court on this issue. Normally, this Court will not consider on appeal any issue not raised and preserved in the record of the court below. See, generally, cases collected in 3 West's South Carolina Digest, *Appeal and Error,* at Key Numbers 169, 499; *Smith v. Brown,* 97 S. C. 239, 81 S. E. 633 (1914). However, in view of the doctrine of *in favorem vitae* which pervades this Court's review of all capital cases, we have considered appellant's argument on this question as set forth in his brief. That argument, which is essentially a challenge to the continued vitality of the M'Naghten Rule where insanity is plead as a defense, is controlled and disposed of by a clear line of authority in this jurisdiction from which we refuse to deviate. *State v. Cannon,* 260 S. C. 537, 197 S. E. (2d) 678 (1973); cases collected in 7 West's South Carolina Digest, *Criminal Law,* at Key Number 48.

(14) Appellant's next contention is controlled by our recent capital case of *State v. Shaw, supra.* The assertion of error is the admission in the sentencing

phase of the bifurcated trial of all items of evidence from the guilt phase. We faced this issue foursquare in *Shaw* and concluded:

The pre-sentence hearing is for the introduction of *additional* evidence in extenuation, mitigation or aggravation of punishment. The statute does not exclude from the consideration of the sentencing authority any evidence received at the guilt determination stage. To the contrary, the sentencing authority is required to consider all the evidence received at the guilt determination stage regarding the circumstances of the crime and the characteristics of the individual defendant together with *additional* evidence, if any, in extenuation, mitigation or aggravation of punishment.

(15) In the course of what appears from the printed record to be a rather heated colloquy between counsel for appellant and a prosecution witness during cross-examination, the witness made the following remark:

. . . do you want me to tell you the reason I'm reading Time (magazine)? Because I know that nobody in this State of South Carolina is going to be electrocuted again.

Appellant's counsel immediately moved for a mistrial. Although the able judge in his discretion denied the motion, he took every precaution possible to ensure that this somewhat impertinent comment, although provoked by appellant's counsel, was rendered innocuous. We disagree the curative instruction, and the trial court's directive to the jury to disregard the remark, was ineffective. See *U. S. v. Swindler,* 416 F. (2d) 25 (4th Cir. 1969), cert. denied, 396 U. S. 1009, 90 S. Ct. 566, 24 L. Ed. (2d) 501. The granting of a new trial based on the misconduct of a prosecuting witness is a matter left to the discretion of the trial judge, 24 C. J. S. *Criminal Law* § 1449 (22), and here we find no abuse thereof. *State v. Lake, supra.*

(16) The next exception assigns error to certain restrictions the lower court placed on defense counsel on cross-examination of an expert witness during

the sentencing phase. Appellant first asserts it was error to deny him the right to refer to a medical text unfamiliar to the witness. Appellant insists in his brief that he was not attempting to introduce the book into evidence, but simply wanted to refer to it during cross-examination. The trial judge ruled that although he would not permit counsel to read from the text [5] unless and until it was made admissible, he would allow the use of and reference to the text during cross-examination. Appellant's counsel responded, "As a matter of fact, all I wanted to do is cross-examine", however he did not pursue that line of questioning. We fail to see how appellant can now assign error to a ruling which permitted the questioning he desired, especially when counsel himself did not take advantage of the ruling.

The second restriction objected to was that appellant was not permitted to use an abstract of a medical report during cross-examination of the expert, which could not be documented as being a part of Mr. Goolsby's state hospital record. A trial judge has broad discretion in controlling the extent and scope of cross-examination, see cases collected in 19 West's South Carolina Digest, *Witnesses,* at Key Number 267, and this discretion extends as well to restricting the cross-examination of experts. *Garrett v. Mutual Benefit Life Insurance Company of New Jersey,* 239 S. C. 574, 124 S. E. (2d) 36 (1962). The voluminous hospital record was available to counsel for both the State and appellant. There was no abuse of discretion in refusing to allow counsel to question the expert from the hospital about a report or abstract which could not be documented as a part of that record. See also *State v. Groome,* S. C. 262 S. E. (2d) 31 (1980).

(17) The final exception argued by appellant relates to the jury charge at the close of the sentencing phase of the bifurcated trial. He submits the charge compelled the jury

---

[5] A prior objection by the State was that counsel was attempting to read from the text, which the court sustained. See *Baker v. Southern Cotton Oil Co.,* 161 S. C. 479, 159 S. E. (2d) 822 (1931).

to return a recommendation of death if any aggravating circumstance was found beyond a reasonable doubt.

In *State v. Tyner, supra,* we held the omission of an instruction that the jury could recommend life imprisonment even if it found the existence of one or more of the statutory aggravating circumstances beyond a reasonable doubt was an arbitrary factor requiring the death penalty be set aside. This holding is in accord with Georgia's requirements for the jury charge at the sentencing phase. See, e. g. *Spivey v. State,* 241 Ga. 477, 246 S. E. (2d) 288 (1978), and cases cited therein.

The failure of the trial judge to give the jury this █ instruction requires the death penalty be vacated and the case remanded for a resentencing proceeding conducted by the trial court in accordance with § 16-3-25(E) (2), Code of Laws of South Carolina (Cum. Supp. 1979).

\* \* \* \* \* \*

Two of the nineteen exceptions raised by appellant were adandoned. We have nevertheless considered the points and issues presented by them, and conclude no error is present. Accordingly, these exceptions are affirmed under our Rule 23. The transcript of proceedings in this case exceeds 1800 pages. We have carefully reviewed the entire record for prejudicial error apparent, but overlooked by counsel, and find none.

\* \* \* \* \* \*

We affirm the conviction, vacate the death penalty and remand.

Affirmed in part; vacated in part; and remanded.

LEWIS, C. J., and LITTLEJOHN, NESS and RHODES, JJ., concur.