21596

The STATE, Respondent, v. Albert "Bo" THOMPSON, Appellant.

(292 S. E. (2d) 581)

*Chief Atty. John L. Sweeny, of S. C. Commission of Appellate Defense*, Columbia, and *Thomas W. Greene* and *Jerry L. Taylor*, Greenville, *for appellant.*

*Atty. Gen. Daniel R. McLeod, Asst. Atty. Gen. Lindy P. Funkhouser* and *Senior Asst. Atty. Gen. Brian P. Gibbes*, Columbia, and *Sol. William W. Wilkins, Jr.*, Greenville, *for respondent.*

Jan. 7, 1982.

HARWELL, Justice:

Appellant Albert "Bo" Thompson was tried by a jury in Greenville County and convicted of armed robbery and murder. Upon recommendation of the jury, he was sentenced to death. This case consolidates Thompson's direct appeal and mandatory review of the death sentence.

On July 10, 1978, George Toubia was shot and killed during the armed robbery of his small grocery store near Simpsonville, South Carolina. Appellant Thompson and two accomplices were arrested for the crimes. One of the accomplices pled guilty to accessory to murder and armed robbery, and the other pled guilty to murder and armed robbery.

Appellant asserts his convictions should be reversed and that he should be allowed to enter a guilty plea in return for a life sentence because of pretrial plea negotiations. Appellant sought an injunction against the State to prevent it from seeking the death penalty; the motion was denied. Appellant argues he had an enforceable agreement with the State for a sentence of life imprisonment. The State asserts that no agreement was ever reached; that in response to appellant's proposal to plead guilty, the solicitor advised appellant's counsel that he would consider a guilty plea only upon a firm commitment by the accused and that he would discuss the matter with the victim's family before he reached a final decision.

Appellant's attempt to create a firm commitment out of plea negotiations has no merit. *Santobello v. New York*, 404 U. S. 257, 92 S. Ct. 495, 30 L. Ed. (2d) 427 (1971), states that "fundamental fairness" forbids the State from seeking the death penalty after plea negotiations. However, *Santobello* merely stands for the proposition that when an accused pleads quilty upon the promise of a prosecutor, the agreement must be fulfilled. Here, there was no promise made by the solicitor; there were merely negotiations.

Relying on *Cooper v. United States*, 594 F. (2d) 12 (4th Cir. 1979), appellant argues that even though an express contract had not been reached, his expectations reasonably formed in reliance upon the honor of the government required that the State be enjoined from seeking the death penalty. In *Cooper*, a firmly advanced proposal had been made to the defendant by an Assistant U. S. Attorney but was withdrawn when the proposal was disapproved by the U. S. Attorney. The 4th Circuit Court of Appeals confined its holding as narrowly as possible to cases where the proposal was specific, unambiguous and made without any reservation. Any plea negotiations between appellant and the State were not specific or unambiguous; there were also two reservations: a firm commitment from the accused and a discussion with the victim's family.

Appellant excepts to the application of the Death Penalty Statute to his case. He asserts that S. C. Code Ann. 16-3-20(C) provides no guidelines for the weighing of aggravating and mitigating circumstances. He also

argues that the scope of review of death penalty cases is too narrow (comparing only prior capital cases tried under the present death penalty statute) and therefore unconstitutional. Appellant contends that he has a right to access to the cases with which the Supreme Court compares each death sentence; however, Section 16-3-25 of the Code does not provide for the right. Next, he argues that the death penalty constitutes disproportionate punishment in his case. This argument is without merit. Upon entering Mr. Toubia's store to rob him, appellant immediately shot him once. Before leaving the store with the fruits of the crime, appellant shot him again.[1] Appellant also contends that the death penalty was applied arbitrarily and capriciously because it was not sought for his two accomplices. These issues were decided adversely to appellant in *State v. Linder*, 278 S. E. (2d) 335 (S. C. 1980) and *State v. Shaw*, 273 S. C. 194, 255 S. E. (2d) 799, cert. denied 444 U. S. 957, 100 S. Ct. 437, 62 L. Ed. (2d) 329 (1979), petition for rehearing denied 444 U. S. 1027, 100 S. Ct. 694, 62 L. Ed. (2d) 662 (1980), and cert. denied 444 U. S. 1026, 100 S. Ct. 690, 62 L. Ed. (2d) 660, petition for rehearing denied 444 U. S. 1104, 100 S. Ct. 1073, 62 L. Ed. (2d) 791 (1980).

Next appellant argues that the trial court erred in refusing to strike language in the murder indictment referring to armed robbery as the aggravating circumstance. However, the trial judge found that stating the aggravating circumstance in the indictment merely alleged the circumstances making the murder subject to capital punishment. Appellant alleges that the crime stated in the indictment, murder committed while in the commission of robbery while armed with a deadly weapon, is no longer a crime in

---

[1] In compliance with the mandate of § 16-3-25(E) and considering both the crime and the defendant, we have determined that the sentence of death is neither excessive nor disproportionate to the penalty imposed in similar cases. *State v. Shaw, et al.*, 273 S. C. 194, 255 S. E. (2d) 799 (1979); *State v. Hyman*, S. C., 281 S. E. (2d) 209 (1981); *State v. Gilbert, et al.*, 283 S. E. (2d) 179 (S. C. 1981). The transcripts, briefs and opinions in those cases used for comparison purposes are public records; thus, the defendant in fact has access to the same information available to the Court.

South Carolina because the 1974 version of Section 16-3-20 was declared unconstitutional; therefore, the indictment was improper. It was not prejudicial to inform the appellant of the aggravating circumstance which the State sought to prove. Appellant also argues that the indictment was improper for stating the aggravating circumstance because it, in effect, charged felony murder; thus the underlying felony (armed robbery) merged with the felony murder and could not be submitted to the jury as an aggravating circumstance in the sentencing phase of the trial. However, appellant concedes that the trial judge did not charge the felony murder rule. In addition, South Carolina adheres to the common law rule of murder and makes no distinction between murder and felony murder. *State v. Judge*, 208 S. C. 497, 38 S. E. (2d) 715 (1946). Therefore, a statutory aggravating circumstance would remain a circumstance of the murder in a death penalty case regardless of whether the crime charged is murder or felony murder. There was no error in the indictment.

Appellant's next argument is that the trial judge erred in not charging the jury on involuntary manslaughter and felony murder. We disagree. The appellant can claim no prejudice by the failure of the court to charge the felony-murder doctrine which raises a presumption of malice on the part of the appellant. A charge of involuntary manslaughter would have been improper, also, as there was no evidence to support the charge. *State v. Jones*, 273 S. C. 723, 259 S. E. (2d) 120 (1979). When we review a jury charge for error, we consider it as a whole in light of the evidence presented during the trial. *State v. Hyman*, 281 S. E. (2d) 209 (S. C. 1981); *State v. Tucker*, 273 S. C. 736, 259 S. E. (2d) 414 (1979). There were two shots fired into the victim. Although there was testimony that the first shot fired by appellant was an "accident", there was also testimony that appellant fired the second shot deliberately to insure the victim's death. We have held that it is only necessary to charge a lesser included offense when there is evidence tending to show that only such lesser crime was committed. *State v. Mickle*, 273 S. C. 71, 254 S. E. (2d) 295 (1979); *State v. Funchess*, 267 S. C. 427, 229 S. E. (2d) 331 (1976). Therefore, it was not error to refuse to charge involuntary manslaughter when at least one of the two shots was fired deliberately.

Appellant contends that the trial court violated Section 16-3-20(E) in excusing four jurors for cause who were unalterably opposed to capital punishment. There is no error. The trial judge had a reasonable basis to conclude that the potential jurors could not faithfully carry out their duties under the law. *State v. Hyman,* supra; *State v. Linder,* supra; *State v. Goolsby,* 275 S. C. 110, 268 S. E. (2d) 31 (1980). Appellant also claims that certain prospective jurors should have been disqualified for cause because of their general opinions in favor of the death penalty. A juror's competence is within the trial judge's discretion and is not reviewable on appeal unless wholly unsupported by the evidence. Section 14-7-1020 of the Code. *State v. Franklin,* 267 S. C. 240, 226 S. E. (2d) 896 (1976); *State v. Watkins,* 259 S. C. 185, 191 S. E. (2d) 135 (1972). The testimony of these jurors demonstrated that each could render an impartial verdict according to law; therefore, they were qualified. *State v. Linder,* supra; *State v. Goolsby,* supra; *State vs. Tyner,* 273 S. C. 646, 258 S. E. (2d) 559 (1979).

Appellant alleges that the trial judge erred by denying his motion for a change of venue due to pretrial publicity. Several days prior to appellant's trial, he and an inmate were involved in an altercation. Several newspapers, radio and television stations reported the incident. Several local attorneys testified for the appellant that they did not believe he could receive a fair trial in the Greenville area. The trial judge denied appellant's motion for a change of venue but stated that he would entertain the motion after *voir dire* examination if an impartial panel could not be obtained. After extensive *voir dire* proceedings, the trial judge concluded that an impartial jury had been seated. Where the trial judge bases his ruling on adequate *voir dire* examination of the jurors, his conclusion will not be disturbed absent extraordinary circumstances. *State v. Neeley,* 271 S. C. 33, 244 S. E. (2d) 522 (1978); *State v. Fowler,* 266 S. C. 203, 222 S. E. (2d) 497 (1976); *State v. Crowe,* 258 S. C. 258, 188 S. E. (2d) 379, cert. denied, 409 U. S. 1077, 93 S. Ct. 691, 34 L. Ed. (2d) 666 (1972). The record reveals that the trial judge took every precaution to insure the elimination of potential jurors that may have been prejudiced by the pretrial publicity, and the absence of

prejudice on the part of those chosen to serve. No prejudice or abuse of discretion is shown.

Next appellant alleges that he was prejudiced by the lower court's refusal at a pretrial hearing to require a journalist to divulge her confidential informant concerning appellant's attack on a jailhouse inmate. The identity of the informant was irrelevant; it had no bearing on whether any of the prospective jurors were aware of the pretrial publicity.

Appellant also argues that his preliminary hearing was so structured that he was denied effective assistance of counsel. The State introduced only one witness at the hearing; a police officer read an accomplice's statement into the record. Appellant argues he was thus deprived of the right to cross examination and discovery of the State's witnesses. This issue was resolved against appellant in *State v. Thompson*, 281 S. E. (2d) 216 (S. C. 1981), in which we held that the absence of direct testimony was not prejudicial to an accused since he was apprised of the nature of the State's evidence. See also, *State v. Jones*, supra.

Appellant also claims that the trial judge erred in not disqualifying for cause certain prospective jurors. One prospective juror initially indicated she thought law enforcement officers were more credible than ordinary people; however, she clearly stated to the court that she would follow its instructions concerning credibility of witnesses. Another prospective juror expressed misgivings about her opinion if the defendant chose not to testify; but once the court advised her more fully concerning the accused's right not to testify, she indicated that she would follow the court's instructions regarding the defendant's choice not to take the stand. The third prospective juror had been privy to erroneous information concerning appellant's case; he stated to the court that he had formed no opinion as to the guilt or innocence of the defendant and that he would give the defendant a fair trial based on the presented evidence. The trial court determined that all three of the challenged jurors were qualified. Because we do not have the benefit of observing first hand the character and demeanor of the jurors as did the trial judge, we rely on his wisdom and judgment unless the record firmly establishes an abuse of discretion. *State v.*

*Thomas,* 268 S. C. 343, 234 S. E. (2d) 16 (1977); *DeLee v. Knight,* 266 S. C. 103, 221 S. E. (2d) 844 (1975). There was no abuse of discretion.

Next appellant argues that the jury panel should have ▮ been quashed because members of his race were systematically excluded from service on the grand jury *and* the petit jury. He alleges that the use of voter registration rolls in selecting the petit jury venire violated his rights under the Sixth Amendment of the U. S. Constitution and Article I, Section 14 of the South Carolina Constitution. This issue was resolved against the appellant in *State v. Hyman,* supra. *Castaneda v. Partida,* 430 U. S. 482, 97 S. Ct. 1272, 51 L. Ed. (2d) 498 (1977), held that an appellant must demonstrate that a disproportionate representation arose from a purposeful discrimination against an identifiable group in order to present a *prima facie* case on this issue. Appellant has made no showing that there was any systematic effort by the jury commissioners in Greenville County to exclude blacks.

Next, appellant argues that the trial judge erred in ▮▮ruling that Section 14-7-1020 limited his attorneys on *voir dire.* He contends that Section 16-3-20(D), which allows defense counsel to examine the potential jurors, allows his counsel unlimited *voir dire* in a capital murder case. The method and scope of *voir dire* is within the trial court's discretion. *State v. Tyner,* supra; *State v. Dawkins,* 268 S. C. 110, 232 S. E. (2d) 228 (1977). The record reveals that appellant's counsel was permitted to ask relevant questions. Appellant has not demonstrated that the trial court abused its discretion.

Appellant also argues that testimony by several witnesses that appellant was in South Carolina after the date he claimed to have left was an impermissible attack on his character. Although a state may not attack a criminal defendant's character unless he places it in issue, relevant evidence properly admissible for other purposes may not be excluded merely because it incidentally reflects on his character. *State v. Thompson,* supra; *State v. Faulkner,* 274 S. C. 619, 266 S. E. (2d) 420 (1980). False and conflicting statements and attempts to run away are evidence of guilty knowledge and intent. *State v. Thompson,* supra; *Town of Hartsville v. Munger,* 93 S. C. 527, 77 S. E. 219 (1913). The statements

were introduced to prove appellant attempted to avoid apprehension. There is no error.

During an accomplice's testimony at trial, the wife of ▌ the deceased victim had a "fainting spell." The trial judge excused the jury while the victim's wife was assisted from the courtroom. Appellant alleges that the trial judge should have granted a mistrial because the jury could have been in sight of the victim's wife as they were leaving through separate doors. We have held that the conduct of a trial is left largely to the discretion of the presiding judge, and this court will not interfere unless the rights of the complaining party were abused or prejudiced. *State v. Lee,* 255 S. C. 309, 178 S. E. (2d) 652 (1971); *State v. Gidron,* 211 S. C. 360, 45 S. E. (2d) 587 (1947); *State v. McGill,* 191 S. C. 1, 3 S. E. (2d) 257 (1939). No abuse of discretion appears from the record.

Finally, appellant argues the trial court erred in ▌ quashing the subpoena duces tecum issued for the Director of the South Carolina Department of Corrections, directing him to bring the electric chair to the courtroom. The appellant alleges that the process of electrocution is evidence in mitigation of the punishment and should have been presented to the jury under Section 16-3-20(B). Our Legislature has determined that capital punishment shall be imposed by electrocution. Section 24-3-530. The manner or nature of capital punishment has been removed from consideration of juries; the Death Penalty Statutory Complex focuses the sentencing authorities' attention on the nature of the crime and the characteristics of the individual defendant. *State v. Shaw,* supra. Therefore, the process of the punishment is irrelevant; the trial court committed no error in refusing to admit the evidence.

We have carefully reviewed the entire record (over 1450 pages) for prejudicial error overlooked by counsel. We find none, and therefore, affirm the conviction and sentence of death of appellant Albert "Bo" Thompson.

LEWIS, C. J., and LITTLEJOHN, NESS and GREGORY, JJ., concur.