ROBERTSON, Justice,
concurring:
I.
I concur in the result we announce this day, that West Cole’s conviction of capital murder and sentence of death should be affirmed. With respect, I suggest that the majority opinion says not enough on one issue and on others reaches the correct result but for the wrong reasons; hence, this separate opinion.
II.
The majority states perfunctorily but unequivocally what has become increasingly clear, that is: that discovery matters in criminal cases are controlled by the guidelines first set forth in Box v. State, 437 So.2d 19, 23-24 (Miss.1983) (Robertson, J., specially concurring, joined by Justices Dan Lee and Prather). In addition to the cases cited by the majority, we have also accepted and followed the Box concurring opinion in Henry v. State, 484 So.2d 1012, 1014 (Miss.1986); Foster v. State, 484 So.2d 1009, 1011 (Miss.1986); Jones v. State, 481 So.2d 798, 803 (Miss.1985).
This case in so many ways is the prototype which makes clear the advantages of the Box procedure. We have the situation so familiar to all experienced trial attor *382 neys — a material witness, in spite of all prosecution diligence, is not found until the last minute. There is no intimation that the prosecuting attorney was acting in bad faith in withholding the witness.
But the fact that the witness truly was discovered only at the last minute, prosecu-torial diligence notwithstanding, in no way vitiates the impact of non-disclosure upon the defendant. The unfairness to the defendant is precisely the same where that witness is found on the eve of trial as where the key witness was known to the prosecution for months but simply kept under wraps. It is for that reason that the Box concurrence gives to the defendant the absolute right upon request to a reasonable continuance. That is, where he is confronted with the situation where the prosecution seeks to offer into evidence that which it ought to have disclosed pursuant to a discovery request but didn’t, the defendant is given the absolute right, following his interview of the witness, etc., to call the proceedings to a halt. If in this case Cole had requested a continuance and if the trial judge had refused to grant it, I would vote to reverse without hesitation.
Of course, the Box guidelines go on to provide that the prosecution would have had the opportunity to avert the continuance by deciding to proceed without calling the undisclosed witness, Tracy Pope. On the other hand, the Box concurrence makes clear that “if on balance a defendant is of the opinion that he has been unfairly surprised by the state’s new evidence, he ought be required affirmatively to request a continuance.... Where the objection is not followed by a motion for a continuance [or mistrial], the defendant should be presumed to have made his judgment call and to have decided on balance that his chances are better if the case proceeds, rather than giving the state the opportunity to start afresh. Where no motion for a continuance [or mistrial] is made, the Rule 4.06 issue should be deemed waived for purposes of appeal.” 437 So.2d at 25.
Today’s authoritative reification of Box is indeed good news, for one of our purposes in Box was to get this Court out of the discovery business. We have decided so many Rule 4.06 cases and have decided them so inconsistently.
For example, we have held on some days that only the defendant and his counsel are in a position to judge the materiality of discoverable but undiscovered evidence. See White v. State, 498 So.2d 368, 370 (Miss.1986); Foster v. State, 493 So.2d 1304, 1308 (Miss.1986); Johnson v. State, 491 So.2d 834, 837 (Miss.1986); Hentz v. State, 489 So.2d 1386, 1388 (Miss.1986). On other days we recognize a quite different, objective test for materiality. See Boches v. State, 506 So.2d 254, 263 (Miss.1987).
On some days we hold that a defendant must show prejudice before he may parlay a discovery violation into reversal on appeal. See Moore v. State, 508 So.2d 666, 668 (Miss.1987); Buckhalter v. State, 480 So.2d 1128, 1129 (Miss.1985); McKinney v. State, 482 So.2d 1129, 1130 (Miss.1986). On others we say little or nothing of any prejudice test en route to reversal. See Henry v. State, 484 So.2d 1012, 1013-14 (Miss.1986); Foster v. State, 484 So.2d 1009, 1011 (Miss.1986); Ford v. State, 444 So.2d 841, 843 (Miss.1984). On some days we find the earth flat. On others we see it square.
I have no illusion the Box guidelines will prove any more susceptible of mechanical application than does any other law. They do, I suggest, hold out the hope of a more principled, consistent resolution of criminal discovery problems. The mere possibility this may be achieved should produce sighs of relief among the bench and bar.
III.
Whether the Box guidelines should be enforced in this July 1984 trial deserves attention. The point of concern is whether defense counsel had fair notice of the necessity of his moving for a continuance or mistrial following his interview with the witness Tracy Pope. I say this in the context of Williams v. State, 507 So.2d 50, 53 (Miss.1987) wherein we declined to impose upon the prosecution a waiver of the right to place in the record the reasons for mak *383 ing certain peremptory challenges to black jurors in the wake of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In Williams we remanded to give the prosecuting attorney an opportunity to make such statement for the record for the rather obvious reason that the prosecuting attorney had no way of knowing at the time of trial of the necessity for placing in the record the reasons for his peremptory challenges. This was because Batson had not been decided at the time the Williams case was tried.
The case at bar is in a wholly different posture. In the first place, motions for continuance — a motion for mistrial would be the equivalent — were certainly well-known and well within the arsenal of stra-tegems available to defense counsel long before the trial of the case at bar. Counsel for West Cole may not seriously contend that he did not know he had a procedural right to move for a continuance or mistrial. Second, Box was decided on August 24, 1983, and was certainly published in the Southern Reporter shortly thereafter. The trial of the case at bar occurred some eleven months later — beginning July 23, 1984. Box was available to defense counsel prior to the trial of this case. Moreover, the matter of the applicability of this particular prong of the Box guidelines has been authoritatively resolved in Cabello v. State, 471 So.2d 332, 343 (Miss.1985), a case in which we declined to reverse a discovery violation where the defendant made no request for a mistrial or continuance.
I have been — and remain — no fan of the idea of procedural bars. See, e.g., my separate opinions in Pennington v. State, 437 So.2d 37, 41-42 (Miss.1983); and Hill v. State, 432 So.2d 427, 443-51 (Miss.1983); and Section IV below. I am ordinarily uncomfortable with the idea of affirming a criminal conviction, particularly in a capital case, because the defendant’s attorney failed procedurally. Here, however, defense counsel was given a reasonable opportunity to interview Tracy Pope before she testified. If he thought his case was being prejudiced by the fact that he had not theretofore had the opportunity to interview her, it was incumbent upon him to say so. The fact that defense counsel made no demand for a continuance or mistrial may only be read as a judgment on his part that such was not reasonably necessary to protect the interests of his client. These considerations, plus Cabello, convince me that we should affirm on this issue.
IV.
For this Court to invoke a single procedural default and affirm a death sentence is one thing. See Hill v. State, 432 So.2d 427, 439-40 (Miss.1983). This particularly so in the Box context, where defense counsel’s objection got him the opportunity to interview the witness and where counsel’s subsequent silence suggests no particular advantage to the accused from a continuance or mistrial. But where we hold nine defense assignments of error waived or otherwise procedurally barred, we are asking for trouble.
Let me be specific. Nine procedural defaults are this day enforced against Cole, each in fact attributable to his counsel’s slowfootedness. These include
(1) failure to request a continuance after having been given the opportunity to interview the witness, Tracy Pope {see majority opinion, Section I, and Section II of this opinion);
(2) failure to secure a ruling on objections to final argument by counsel (majority opinion, Section III);
(3) failure to request a continuance where two judgments of conviction were offered as evidence of aggravating circumstances (majority opinion, Section V; also a Box default);
(4) failure to object to jury instructions (majority opinion, Section VI);
(5) failure to object to evidence of two prior convictions which are not allowable as statutory aggravating circumstances (majority opinion, Section IX);
(6) failure to make offer of proof regarding certain mitigating evidence excluded at sentencing phase (majority opinion, Section XI);
*384 (7) failure to object to jury instruction regarding aggravating circumstance of “especially heinous, atrocious and cruel” (majority opinion, Section XIII);
(8) failure to object to jury instruction on burden of proof at sentencing phase (majority opinion, Section XIV); and
(9) failure to raise issue of racial discrimination in administration of death penalty (majority opinion, Section XVIII).
In today’s case, I am convinced the result would be the same if we decided these points on the merits — with the exception, of course, of the Box waivers. The other points listed above are substantively without merit, all of which makes me wonder what motivates the majority to hold them waived, for if not in today’s case then somewhere down the road such a course will surely boomerang. I say this in the context of the near certain fact that in this and every other case in which the penalty of death is imposed, at some point, usually on post-conviction proceedings, the defendant will argue that at his trial he was denied his constitutional right to the effective assistance of counsel.[1] See, e.g., Irving v. State, 498 So.2d 305, 317 (Miss.1986); Evans v. State, 485 So.2d 276, 279-82 (Miss.1986); Dufour v. State, 483 So.2d 307, 308-10 (Miss.1985). When we hold nine of defendant’s assignments of error barred because they were not procedurally preserved, we would ordinarily be hard pressed to hold that trial counsel was effective. Indeed, the case will come where, if there be candor in our character, we must, confess that procedural forfeiture of nine assignments of error comes perilously close to establishing the ineffectiveness of trial counsel as a matter of law.
V.
I find misleading one comment made by the majority en route to its many holdings that points asserted by Cole have been waived for want of procedural niceties. I refer to the statement on page 369.
If no contemporaneous objection is made, the error, if any, is waived. This rule’s applicability is not diminished in a capital case, [citations omitted]
If this statement be read as stating that the contemporaneous objection rule is not eviscerated altogether in capital cases, the statement is certainly correct. The rule does apply in capital cases. Its content, however, is softened.
One source of this softened content is the “death is different” principle. Because capital is “qualitatively different,” Wood-son v. North Carolina, 428 U.S. 280, 305, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976) holds that
there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment.
428 U.S. at 305, 96 S.Ct. at 2991.
The death is different principle has been recognized by the Supreme Court on occasions almost too often to enumerate. See, e.g., Booth v. Maryland, — U.S. -, -n. 12, 107 S.Ct. 2529, 2536 n. 12, 96 L.Ed.2d 440 (1987); Ford v. Wainwright, 477 U.S. 399, 411-412, 106 S.Ct. 2595, 2603, 91 L.Ed.2d 335, 347 (1986); Spaziano v. Florida, 468 U.S. 447, 456, 104 S.Ct. 3154, 3160, 82 L.Ed.2d 340, 349 (1984); Sullivan v. Wainright, 464 U.S. 109, 112, 104 S.Ct. 450, 78 L.Ed.2d 210, 213 (1983); Stephens v. Kemp, 464 U.S. 1027, 1032, 104 S.Ct. 562, 565, 78 L.Ed.2d 370, 375 (1983) (per dissenting opinion of Justice Powell, joined by then Chief Justice Burger, now Chief Justice Rehnquist and Justice O’Conner); Beck v. Alabama, 447 U.S. 625, 638, 100 S.Ct. 2382, 2390, 65 L.Ed.2d 392, 403 (1980); Lockett v. Ohio, 438 U.S. 586, 604-05, 98 S.Ct. 2954, 2964-65, 57 L.Ed.2d 973, 989-90 (1978); Coker v. Georgia, 433 U.S. 584, 598, 97 S.Ct. 2861, 2869, 53 L.Ed.2d 982 (1977); Gardner v. Florida, 430 U.S. 349, 357-58, 97 S.Ct. 1197, 1204-05, 51 L.Ed.2d 393, 402 (1977); Gregg v. Georgia, 428 U.S. 153, 187-88, 96 S.Ct. 2909, 2931, 49 L.Ed.2d *385 859 (1976); Furman v. Georgia, 408 U.S. 238, 287-89, 306, 92 S.Ct. 2726, 2751, 3752, 3760, 33 L.Ed.2d 346, 376-78 (Brennan, J., and Stewart, J., concurring) (1972).
A comparable principle recognized in this state is that of heightened appellate scrutiny of criminal trials which have resulted in imposition of the sentence of death. The idea has its roots deep in our jurisprudential past. See, e.g., Russell v. State, 185 Miss. 464, 469, 189 So. 90, 91 (1939). It received its modern expression in Irving v. State, 361 So.2d 1360 (Miss.1978) where we wrote
We recognize that thoroughness and intensity of review are heightened in cases where the death penalty has been imposed, [citation omitted] What may be harmless error in a case with less at stake becomes reversible error when the penalty is death.
361 So.2d at 1363.
Other cases recognizing the principle, beginning with the most recent, include Fisher v. State, 481 So.2d 203 (Miss.1985); Jones v. State, 461 So.2d 686 (Miss.1984); Neal v. State, 451 So.2d 743 (Miss.1984); Williams v. State, 445 So.2d 798, 810 (Miss.1984); Laney v. State, 421 So.2d 1216, 1217 (Miss.1982).
We are not the only state to recognize the heightened scrutiny principle. See, e.g., State v. Thomas, 427 So.2d 428, 433 (La.1982). South Carolina goes so far as to ignore the contemporaneous objection rule in all death penalty cases. See State v. Goolsby, 275 S.C. 110, 268 S.E.2d 31, 39 (1980).
Without further belaboring the point, the majority’s statement that the contemporaneous objection “rule’s applicability is not diminished in a capital case” is five fold wrong. It is wrong as a matter of law, as the death-is-different and heightened scrutiny cases make clear. It is wrong as a matter of policy, because death is different, a fact beyond alteration by sophistry or polemics or dogmatic declaration. It is wrong as a matter of prediction because no court composed of judges possessing humanity has the stomach for an unwaivering rule that all procedural forfeitures translate into death. It is wrong because it is susceptible of abuse, of use for less than laudable reasons.[2] Beyond these points, it is simply wrong.
VI.
In Section XVII the Court discussed the Defendant’s requested Instruction D-5 which would have defined for the jury the concept of a “mitigating circumstance.” The Court holds the assignment of error without merit, its reason being that the tendered instruction “is not required.” While I concur in that view, I note the point for it seems a matter of common sense that such a definitional instruction might be quite helpful to the jury. I agree that the instruction defining mitigating circumstances is not required, but it certainly ought to be given where requested. And the same goes for any instruction the State may request defining aggravating circumstances.
Except as noted above, I concur in the opinion of the Court.
PRATHER and ANDERSON, JJ., join in this opinion.
DAN M. LEE, J., joins in parts I, II, III and VI only.

. Louisiana’s approach to procedural defaults in death penalty cases is quite sensible.
In death penalty cases, this court has reviewed assignments of error, despite the absence of a contemporaneous objection, ... [to avoid] later consideration of the error in the context of [a claim of] ineffective assistance of counsel.
State v. Hamilton, 478 So.2d 123, 126 n. 7 (La.1985).

. See Evans v. State, 441 So.2d 520, 531-33 (Miss.1983); and Wheat v. Thigpen, 793 F.2d 621, 626-27 n. 5 (5th Cir.1986).